ROBERT H. WESTPHAL *et al.*, Plaintiffs-Appellees, *v.* PAUL D. FRIDLY *et al.*, Defendants-Appellants.

(No. 75-45; 

Second District (2nd Division)—December 22, 1975.

William L. Balsley, of Loves Park, for appellants.

Peterson & Geissler, of Rockford (William W. Peterson, of counsel), for appellees.

Mr. JUSTICE RECHENMACHER delivered the opinion of the court:

This appeal raises only one issue—whether the trial court erred in dismissing the defendants' counterclaim.

The litigation out of which the counterclaim in question arose was the result of an altercation between adjoining lot owners. Westphals, the original plaintiffs, and the counterdefendants, own Lot 5 in Fridly's Leanna Lake Subdivision in Winnebago County. Their residence on this lot is set back some 60 or 70 feet from the street. Fridlys, the original defendants and counterplaintiffs, here, proposed to build a residence on Lot 4 adjoining Westphals, at a point some 30 feet or so back from the street. Westphals objected to the location of Fridlys' proposed house on

the ground that it would block their view and impair the value of their property. Westphals invoked the aid of a commission established years before at the instance of Fridly, when the subdivision was established under a document setting forth certain "Subdivision Conditions and Restrictions." The conditions and restrictions were declared to be covenants running with the land and the document established a committee of five property owners to interpret and enforce the conditions and restrictions. One of the conditions was that:

> "No building shall be altered on the exterior, erected or placed on any building lot in this Subdivision until the building plans, waste disposal system plans and a plot plan showing the location of such building and system have been submitted to and approved in writing by a majority of a committee composed of [naming the committee], which committee shall be empowered to approve or disapprove such plans in respect to conformity and harmony of external design and existing or proposed structures in said Subdivision."

Fridlys submitted their building plan to the committee, and it was approved, or if not approved, was not objected to within the 10 days after which the condition would be waived. They did not submit a waste disposal plan, this requirement having lapsed in the meantime by a pre-empting county regulation. Neither did Fridlys submit a plot plan showing the proposed location of the house. Fridlys contended this was not required because since the creation of the subdivision conditions and restrictions, a county ordinance had been passed allowing a minimum 30-foot setback and that this abrogated the requirement to submit a plot plan to the committee.

This interpretation was apparently not in line with the committee's thinking. The matter was discussed at a committee meeting and although no formal action was taken, two members of the committee called on Fridlys and after inspecting the proposed site of the house, asked him to move it back. Testifying, one of the committee members said that the committee "felt the house was blocking the view, blocking Westphal's house too much. It stuck out too far. And all our restrictions that we have, it says that the homes are supposed to conform. And we couldn't see any conformity here."

While the witness testified that the committee requested Fridly to move his building site back there was no definite number of feet suggested for the set back and the committee apparently dropped the matter after indicating their disapproval of the present location.

The subdivision conditions and restrictions contained the following provision:

"In the event of the violation or attempted violation of any of the covenants and restrictions herein contained, any person holding record title to any lot in said Subdivision may institute proceedings in equity to enforce said covenants or to join in any action to terminate or restrain the violation thereof, it being the express intention of the parties hereto to invest such lot owners with an equitable interest in such conditions and restrictions."

Based on this paragraph of the conditions and restrictions, Westphals filed a complaint for injunction against Fridlys, praying that Fridlys be restrained from constructing their building "as * * * presently in place and being constructed."

Fridlys answered, asserting that the requirement to submit a plot plan had been waived by failure of the committee to enforce it against others, whose violation of that provision had been acquiesced in and that the plaintiffs, not being members of the committee, had no standing to bring the suit. Fridlys also filed a counterclaim in a separate document filed at the same time alleging that the plaintiffs had "wrongfully instituted an Injunction suit against Defendants," causing injury to the defendants in that they had been delayed thereby in the construction of their house; said delay had resulted in increased building costs, that defendants had to pay a greater rate of interest due to such delay and had incurred attorney's fees to defend the suit. The plaintiffs moved to dismiss the counterclaim as being insufficient in law.

After a hearing on the merits the trial court denied the prayer for injunction and dismissed the counterclaim, thus leaving the parties where it found them.

In this appeal Fridlys contend the court erred in dismissing their counterclaim. They contend that the counterdefendants' motion to dismiss the counterclaim as being insufficient in law had the effect of admitting the well-pleaded allegations of the counterclaim; that the allegations thereof stated a cause of action, and therefore it was error for the court to dismiss the counterclaim without a hearing on the merits.

■■ It is a well-recognized rule of pleading that a motion to dismiss admits all the facts of the opponent's claim which are well pleaded. (*Lincoln National Bank v. Cullerton*, 18 Ill.App.3d 953.) However, it is equally well established that conclusions of law are not well-pleaded facts and therefore are not admitted by the motion to dismiss. *Burke v. Sky Climber, Inc.*, 57 Ill.2d 542; *Pierce v. Carpentier*, 20 Ill.2d 526, 531; *Scattering Fork Drainage Dist. v. Ogilvie*, 19 Ill.App.3d 386.

The key allegation of the counterclaim is in paragraph 7, which states:

"That Plaintiffs *wrongfully* instituted an Injunction suit against Defendants, in the Circuit Court of the 17th Judicial Circuit,

Winnebago County, Illinois, Case Number 74 1906 seeking to prevent Defendants from the construction of said house." (Emphasis added.)

Since no injunction was actually issued and consequently no damages flowed from the injunction, the counterplaintiffs could only succeed if they established that the mere bringing of the suit was wrongful, that is, tortious. That the institution of the suit was in itself a wrongful act was a mere conclusion of law, requiring specific allegations indicating the suit was groundless, false or malicious. However, there are no allegations to sustain that conclusion in the counterclaim.

■■■ From the facts of the case as set out above it is apparent that the suit was not groundless, since there was a covenant specifically giving any lot owner "an equitable interest in such conditions and restrictions" and the right to "institute proceedings in equity to enforce said covenants." Nor was the suit malicious or lacking in good faith merely because the injunction was not granted. Westphals actually suffered a disadvantage from the placing of Fridlys' house on the particular site and they consulted with the committee set up to enforce the restrictions and conditions of the subdivision and received its opinion that Fridlys had acted in violation of these restrictions in the placement of the proposed house. They thus had a right in law by the covenant and a basis in fact due to their damage, to seek redress through the courts by way of an injunction. Indeed, it was Fridly himself, the counterplaintiff here, who conceived and created the building restriction code which is the basis of this action. He created the code and the machinery to enforce it at the time he established the subdivision and provided that any record title holder had a right to restrain the violation thereof, making this a covenant running with the land. It is apparent, therefore, that the mere bringing of a suit for injunction was not a wrongful act unless done maliciously or irresponsibly and without cause to believe that it was justified. The counterclaim here does not allege malice or cite any facts to establish that the suit was groundless or without reasonable cause. The fact that the court did not grant the injunction based on its belief that the requirement as to a plot approval had been waived by previous failure to enforce it, is not a result the counterdefendants were required to anticipate so as to make the suit wrongful, if they did not anticipate it.

In *T.E. Hill Co. v. Contractors' Supply & Equipment Co.*, 249 Ill. 304, our Supreme Court said:

"At common law a person is not liable for bringing any suit, criminal or civil, or for causing a seizure of property, if the court had jurisdiction of the subject matter and the parties, unless he acts maliciously and without probable cause." (249 Ill. 304, 310.)

616

While this is an old case, Prosser, Law of Torts (4th ed. 1971), confirms the same principle in stating (§ 120, at 855, "Wrongful Civil Proceedings"):

> "It is generally agreed that the termination of the proceeding in favor of the person against whom it is brought is no evidence that probable cause was lacking, since in a civil action there is no preliminary determination of the sufficiency of the evidence to justify the suit."

■■ Here the counterdefendants clearly had a right to their day in court and no allegations of malice or reckless or irresponsible behavior in the bringing of the suit having been alleged, the description of the suit as "wrongful" was a mere conclusion of law and the counterclaim based on this mere conclusion was insufficient. To hold otherwise would be to deny persons their rightful remedy at law and to chill the privilege to use the courts to determine justiciable matters for fear of suffering damages by mere reason of losing.

The appellees also raise the question of the lack of verification of the counterclaim. We do not consider that question here in view of our holding that the counterclaim is legally insufficient in its allegations.

We believe the counterclaim was properly dismissed and the judgment of the trial court is therefore affirmed.

Judgment affirmed.

T. MORAN, P. J., and DIXON, J., concur.