ANTON M. PANTONE *et al.*, Plaintiffs-Appellants, *v.* JAMES THOMAS DEMOS *et al.*, Defendants-Appellees.

First District (5th Division)   No. 77-332

Opinion filed April 14, 1978.

Eugene L. Shepp, of Chicago, for appellants.

William J. Harte, Ltd., of Chicago, for appellee Noel J. Murtagh.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Perry L. Fuller, D. Kendall Griffith, and Thomas L. Browne, of counsel), for appellee James Thomas Demos.

Mr. JUSTICE MEJDA delivered the opinion of the court:

Plaintiffs, Dr. Anton M. Pantone and Dr. Arnold B. Swerdlow, brought this action in six counts, three on behalf of each plaintiff, for the alleged wrongful naming of them as defendants in a medical malpractice action. The malpractice action was filed by the defendant, James T. Demos, a duly licensed attorney, on behalf of the defendant, Noel J. Murtagh, in the latter's capacity as administrator of the estate of his deceased wife, Anne Murtagh. Defendants moved to dismiss the complaint for failure to

state a cause of action. The trial court sustained both motions and entered an order dismissing the complaint as to each defendant, and plaintiffs appeal. The sole issue before this court is whether plaintiffs' complaint states a cause of action against either, or both, defendants. We affirm. A summary of the facts and allegations contained in plaintiffs' complaint follows.

On December 20, 1972, Anne Murtagh, the now deceased wife of the defendant, Noel J. Murtagh, entered Skokie Valley Community Hospital for childbirth. Upon her admission to the hospital she was referred to the radiology department for the purpose of undergoing a chest X ray in accordance with the usual regimen and practice of the hospital. Plaintiff, Dr. Pantone, was on duty in the radiology department at the time, and he supervised the taking of decedent's chest X ray films. This was the only time Dr. Pantone saw the decedent and the taking of her chest X ray was the sole care and treatment which he rendered to the decedent.

Later that same day the other plaintiff, Dr. Swerdlow, was requested by the decedent's attending physician to perform two venous cutdowns on decedent, which he did, without unusual or untoward incident. This was the only time Dr. Swerdlow saw decedent and this was the only care and treatment which he rendered to the decedent. Mrs. Murtagh died later that same day from complications encountered in the course of her childbirth.

Thereafter, defendant Demos filed a medical malpractice action on behalf of defendant Murtagh, who had been appointed administrator of his wife's estate, against a number of defendants, including Dr. Pantone and Dr. Swerdlow. All defendants in that action were accused of committing the exact same careless and negligent acts, namely: (a) failing to control decedent's vaginal bleeding so that as a direct and proximate result thereof, plaintiff's decedent's sustained her death; and (b) failing to have blood available to supplement plaintiff's decedent's blood loss.

Subsequently, Dr. Pantone, by and through his attorneys in the original malpractice action, requested the plaintiff therein to admit certain facts, namely, that the only contact Dr. Pantone had with the decedent was the interpretation of her chest X ray and further that said interpretation did not in any way cause or contribute to the death of the decedent.

Thereafter, the plaintiff in that suit, by and through his attorney, replied that he was unable to either admit or deny said facts until after the taking of Dr. Pantone's deposition. Dr. Pantone's deposition was, in fact, never taken, but nonetheless he was dismissed as a party defendant in the malpractice suit on May 21, 1976, at which time his motion for summary judgment was sustained by the court. Dr. Swerdlow likewise was dismissed as a party defendant in the malpractice suit on June 7, 1976, when his motion for summary judgment was sustained by the court.

Following their dismissal from the malpractice suit, Dr. Pantone and

Dr. Swerdlow brought the instant action against the plaintiff in the former action and his attorney, alleging that both defendants were guilty of willfully and wantonly bringing suit against them without reasonable cause and also with maliciously prosecuting the malpractice suit against them without having reasonable cause to do so. In addition, these plaintiffs also sued the attorney defendant for ordinary negligence alleging that he fell below the standards of care required of him in bringing suit against them without having reasonable cause to do so. As noted, the trial court dismissed the complaint as to each defendant for failure to state a cause of action, and this appeal follows.

OPINION

■■ Preliminarily, we note that the thrust of plaintiffs' arguments to this court is that new legal remedies must be made available to doctors whose livelihood may be endangered by their being improperly named defendants in a medical malpractice action. We must disagree. Rather, we concur with the recent pronouncement of the Illinois Appellate Court for the Second District in the similar case of *Lyddon v. Shaw* (1978), 56 Ill. App. 3d 815, 822, 372 N.E.2d 685, 690, that the public interest in free access to the courts as a means of settling disputes "demands that we reject any effort to extend the tort liability for the wrongful filing of a lawsuit beyond the ambit of an action for malicious prosecution or abuse of process."

In counts I and IV of their complaint, plaintiffs attempted to plead tort actions alleging willful and wanton misconduct against both defendants. More specifically, in these two counts plaintiffs alleged that defendants owed them a duty to refrain from willfully and wantonly bringing suit against them without having reasonable cause to believe that they were guilty of medical malpractice, that defendants breached this duty by filing suit against the plaintiffs with a reckless disregard as to the truth or veracity of the allegations contained in such suits, and that plaintiffs were damaged thereby.

■■ The initial response to this contention is that the cause of action alleged by plaintiffs in these counts is not recognized in Illinois. Despite plaintiffs' claim that counts I and IV contain elements "commonly and historically necessary to plead in tort," there is no historical or common law basis for the willful and wanton cause of action proposed herein. In *T. E. Hill Co. v. Contractors' Supply & Equipment Co.* (1911), 249 Ill. 304, 310, 94 N.E. 544, 546, our supreme court stated:

> "At common law a person is not liable for bringing any suit, criminal or civil, or for causing a seizure of property, if the court had jurisdiction of the subject matter and the parties, unless he acts maliciously and without probable cause."

*Hill* still represents the state of the law in Illinois. (See *Lyddon v. Shaw;*

*Westphal v. Fridly* (1975), 34 Ill. App. 3d 611, 339 N.E.2d 30.) Thus, the existent remedy for plaintiffs' alleged wrong lay in an action for malicious prosecution. Therefore, counts I and IV were properly dismissed for failure to state a cause of action for the wrongful initiation of civil proceedings.

However, plaintiffs also alleged in these counts that article I, section 12 of the Illinois Constitution guarantees them redress for such alleged wrongful acts. Section 12 reads as follows:

> "Every person shall find a certain remedy in the laws for all injuries and wrongs which he receives to his person, privacy, property or reputation. He shall obtain justice by law, freely, completely, and promptly." (Ill. Const. 1970, art. I, §12.)

Plaintiffs argue that this provision constitutes a mandate that this court recognize a new cause of action for the willful and wanton filing of a lawsuit. We cannot agree.

■■ Section 12 is "an expression of a philosophy and not a mandate that a 'certain remedy' be provided in any specific form or that the nature of the proof necessary to the award of a judgment or decree continue without modification." (*Sullivan v. Midlothian Park District* (1972), 51 Ill. 2d 274, 277, 281 N.E.2d 659, 662.) Thus, that plaintiffs in this case may fear that they would be subjected to more onerous burdens of proof under the recognized remedies for such wrongs is irrelevant. So long as some remedy for the alleged wrong exists section 12 does not mandate recognition of any new remedy. (See *Lyddon v. Shaw; Steffa v. Stanley* (1976), 39 Ill. App. 3d 915, 350 N.E.2d 886; *Goldstein v. Hertz Corp.* (1973), 16 Ill. App. 3d 89, 305 N.E.2d 617.) As recognized by the *Lyddon* court, in this type of case one may file an action for malicious prosecution, or perhaps for abuse of process, and furthermore "a party who is put to the defense of a groundless lawsuit has available the remedy of a motion in the original action for an award of attorney fees under section 41 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 41) and in an appropriate case may be instrumental in the institution of disciplinary proceedings against the offending attorney." (56 Ill. App. 3d 815, 823, 372 N.E.2d 685, 691.) Section 12 mandates no additional remedies.

Plaintiffs have also advanced several public policy considerations which they contend should lead this court to voluntarily recognize an action for the willful and wanton institution of a suit without reasonable cause. Principally, plaintiffs argue that the court must fashion a new remedy to deal with the medical malpractice crisis. Plaintiffs further suggest that their new cause of action is necessary to eliminate a potential strain on our judicial system and to correct the following inadequacies in existing remedies: (1) that section 41 of the Civil Practice Act only is available against a litigant, not his attorney, and only allows recovery of

reasonable expenses and attorneys' fees, and (2) that other causes of action (*i.e.*, malicious prosecution) might not be applicable to certain factual situations and might subject plaintiffs to more difficult burdens of proof. We are not persuaded.

First of all, we note that the new remedy proposed by plaintiffs would not necessarily prove an advantage to our judicial system, since the lesser standard would encourage suits against those persons who still maintained unsuccessful malpractice actions. As our supreme court stated early in *Smith v. Michigan Buggy Co.* (1898), 175 Ill. 619, 629-30, 51 N.E. 569, 572, where it refused to eliminate the requirement of special injury before a malicious prosecution action would lie:

> "Those, who favor this species of action, also claim that, if the courts refuse to allow such actions to be maintained, litigation will be encouraged, and causeless and unfounded civil suits will be apt to be brought. On the contrary, the danger is that litigation will be promoted and encouraged by permitting such suits as the present action to be brought. This is so, because the conclusion of one suit would be but the beginning of another. A defendant, who had secured a favorable result in the suit against him, would be tempted to bring another suit * * *. Litigation would thus become interminable. * * *. There would thus be substantially a trial of every lawsuit twice instead of once * * *."

Such logic is applicable to the instant case and leads us to conclude that plaintiffs' new cause of action would result in little, if any, benefit to judicial economy. Finished litigation would be more likely to be revived and prolonged.

As to the medical malpractice crisis, we note that the legislature has already responded somewhat to this problem.

> "In 1976 the State legislature, reacting in part to the problem of frivolous malpractice suits, amended section 41 of the Illinois Civil Practice Act, which subjects a party pleading false allegations to the payment of attorney fees, by eliminating the former requirement that the allegations be shown to have been made in bad faith, and substituting a requirement for a lesser showing that the allegations were made 'without reasonable cause.' (Ill. Rev. Stat. 1975, ch. 110, par. 41; Jenner & Martin, Supplement to Historical & Practice Notes, Ill. Ann. Stat. ch. 110, par. 41 (Smith-Hurd Supp. 1977).)" *Lyddon v. Shaw* (1978), 56 Ill. App. 3d 815, 821, 372 N.E.2d 685, 689.

■■ Most importantly, however, despite the medical malpractice crisis and the limited remedies presently available, the overriding public policy of free and unfettered access to the courts by potential suitors requires rejection of plaintiffs' position. The Illinois courts have long adhered to

the established policy "that courts should be open to litigants for settlement of their rights without fear of prosecution for calling upon the courts to determine such rights [citation]." (*Franklin v. Grossinger Motor Sales, Inc.* (1970), 122 Ill. App. 2d 391, 396, 259 N.E.2d 307, 309, *cert. denied* (1971), 403 U.S. 911, 29 L. Ed. 2d 688, 91 S. Ct. 2207.) Thus, it is that our courts have consistently applied, and refused to lessen, the elements necessary in proving a case for malicious prosecution. (See *Schwartz v. Schwartz* (1937), 366 Ill. 247, 8 N.E.2d 668; *Smith v. Michigan Buggy Co.; Westphal v. Fridly; Franklin v. Grossinger Motor Sales, Inc.; Caspers v. Chicago Real Estate Board* (1965), 58 Ill. App. 2d 113, 206 N.E.2d 787.) As the court stated in *Lyddon v. Shaw:*

> "The 'obvious public interest' in affording every citizen 'the utmost freedom of access to the courts' has also inspired the rule in the law of defamation that anything said by litigants or counsel relating to the matter at issue is privileged, even though this privilege acts to deprive parties, in most cases, of any civil remedy for defamatory statements made in the course of such judicial proceedings. (Prosser, Torts §114, at 778 (4th ed. 1971); see also, *e.g., Macie v. Clark Equipment Co.* (1972), 8 Ill. App. 3d 613.) This same public interest demands that we reject any effort to extend the tort liability for the wrongful filing of a lawsuit beyond the ambit of an action for malicious prosecution or abuse of process. These considerations apply with equal force, not only to a party litigant, but to his counsel, (see *Spencer v. Burglass* (1976), La. App., 337 So.2d 596), since a litigant's free access to the courts would frequently be of little value to him if he were denied counsel of his choice by a rule which rendered attorneys fearful of being held liable as insurers of the merits of their client's case, and therefore unwilling to undertake representation in close or difficult matters. The very purpose of a court of law is to determine whether an action filed by a party has merit and we refuse to recognize a rule which would render a litigant and his attorney liable in tort for negligently (or even, willfully and wantonly) failing to determine in advance that which, ultimately, only the courts could determine." (56 Ill. App. 3d 815, 822, 372 N.E.2d 685, 690.)

We concur with this statement.

■■ Plaintiffs' answer this position, however, by contending that rejection of their proposed cause of action will result in denying them the same free access to the courts that we seek to insure to potential malpractice plaintiffs. In response we note first, that plaintiffs still have certain court actions such as malicious prosecution available to them to determine whether they have been legally wronged so as to be entitled to damages. Secondly, our courts have determined that public policy

requires a safeguarding of a suitor's access to the courts without fear of easily maintained countersuits for bringing such actions. We find no basis in plaintiffs' arguments for contravening such policy. Therefore, we decline to recognize a new cause of action for the willful and wanton filing of a civil lawsuit, and thus affirm our earlier conclusion that the trial court properly dismissed counts I and IV of plaintiffs' complaint for failure to state a cause of action.

Counts II and V of plaintiffs' complaint purport to state a cause of action against the defendant attorney, James Demos, alone. In these counts plaintiffs have alleged that the attorney defendant owed them a duty to refrain from filing an action against them without having reasonable evidence to support such allegations of medical malpractice, and that defendant's conduct in this case breached this duty. Plaintiffs, therefore, are essentially suing attorney Demos for legal malpractice.

The Illinois decisions involving actions for attorney malpractice are apparently grounded upon the existence of the attorney-client relationship. Indeed, in a majority of States it is still the rule that an attorney may not be liable for professional negligence to persons other than their clients. (See Annot., 45 A.L.R.3d 1181 (1972).) However, in affirming the trial court's dismissal of these counts in the instant case, we need not consider the broader question of whether an attorney in Illinois can ever be held liable to a person other than his client for legal malpractice. Rather, we merely confine ourselves to the question in the case at bar: whether an attorney can be held liable to a former adverse litigant for professional negligence.

■■ We believe the answer to this question must be "no," for the identical reasons expressed earlier in this opinion. Establishment of such a negligence cause of action would clearly inhibit free access to the courts. (See *Lyddon v. Shaw.*) Even those courts which have liberalized the scope of an attorney's duty of care to include intended beneficiaries of the original attorney-client relationship have refused to recognize a duty under the facts of the instant case. As the California Court of Appeals for the Second District stated in *Norton v. Hines* (1975), 49 Cal. App. 3d 917, 921, 123 Cal. Rptr. 237, 240:

> "In the case at bar a former litigant is suing adverse counsel. Clearly, an adverse party is not an intended beneficiary of the adverse counsel's client. If a cause of action exists against attorneys for the reasons alleged here, it must be pleaded as an action for malicious prosecution. We see no reason to extend applicable law now found in cases involving attorneys and third parties when there is sound and recognized public policy for limiting the cause of action to malicious prosecution * * *." (See also *De Luca v. Whatley* (1974), 42 Cal. App. 3d 574, 117 Cal. Rptr. 63.)

The *Norton* court noted that the public policy requiring the limitation of such causes of action to suits for malicious prosecution was that of free access to the courts. If a negligence cause of action "is permitted, this policy will be subverted." (*Norton v. Hines* (1975), 49 Cal. App. 3d 917, 923, 123 Cal. Rptr. 237, 241.) Thus, we conclude that the plaintiffs in the instant case are not entitled to pursue a claim of negligence against defendant Demos, and therefore the trial court properly dismissed counts II and V of plaintiffs' complaint.

Finally, we turn to a consideration of counts III and VI of plaintiffs' complaint. In these counts plaintiffs allege a cause of action for malicious prosecution against both defendants. We affirm the trial court's dismissal of these counts also.

One of the elements necessary for a malicious prosecution cause of action is that of a "special injury." (See *Schwartz v. Schwartz; Franklin v. Grossinger Motor Sales, Inc.; Caspers v. Chicago Real Estate Board.*) Plaintiffs contend their pleadings adequately allege such special injury in the form of damage to their professional reputations and an expectation that they will be required to pay increased premiums for malpractice insurance. We disagree.

First of all, we note that such allegations are merely in the nature of conclusions of the pleader. No facts are alleged demonstrating such actual or potential harm. On this basis alone, therefore, such allegations of special injury are insufficient. *Cf. Lyddon v. Shaw; Caspers v. Chicago Real Estate Board.*

■■ Secondly, such allegations of harm, even if not merely conclusory, are legally insufficient to constitute a "special injury" for purposes of a malicious prosecution action. General damages are such as the law implies and presumes to have accrued from the wrong complained of, while special damages are such as actually, but not necessarily, accrue and so must be proved. (*Schwartz v. Schwartz*; see also 52 Am. Jur. 2d *Malicious Prosecution* §§10, 11 (1970).) In *Schwartz v. Schwartz* our supreme court clearly stated that the type of special injury needed to maintain a malicious prosecution action was one "not necessarily resulting in any and all suits prosecuted to recover for like causes of action." (366 Ill. 247, 250, 8 N.E.2d 668, 670.) In this case the allegations of damage to plaintiffs' professional reputation are certainly not of such a unique character. Damage to reputation, be it professional or personal, is unfortunately a consequence of most litigation. It does not constitute a special loss over and above the ordinary expense and trouble attendant upon the defense of any civil suit. See *Caspers v. Chicago Real Estate Board.*

■■ Likewise, an allegation of increased insurance premiums does not constitute a special injury. As the trial court properly found, "[a]ll litigants

suffer from the possibility of increased insurance premiums." Even if there may be some doubt as to such a consequence resulting in any or all civil suits, the question is whether such an injury results from all suits for "like causes of action." Clearly in all malpractice suits against physicians, as well as other professional persons, the aspect of increased insurance premiums is present. Thus, we conclude that plaintiffs' complaint does not state a cause of action for malicious prosecution in that the element of special injury is lacking. Therefore, the trial court properly dismissed counts III and VI of plaintiffs' complaint for failure to state a cause of action.

For all of the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.