CHARLENE TATOSIAN, Adm'x of the Estate of Lynn Marsh, Deceased, Plaintiff-Appellant, *v.* DR. GUNARS GRAUDINS *et al.*, Defendants-Appellees.

First District (1st Division)   No. 79-79

Opinion filed July 7, 1980.—Rehearing denied August 4, 1980.

Herbert P. Carlson and Lee Iversen, and Edward J. Bradley, of Bradley, Bradley & Nedderman, all of Chicago, for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Stanley J. Davidson and John G. Langhenry, Jr., of counsel), for appellees Dr. Stewart Freifeld and Dr. Alzes.

Wildman, Harrold, Allen & Dixon, of Chicago (Mark C. Fedota and Douglas L. Prochnow, of counsel), for appellee Dr. Gunars Graudins.

Clausen, Miller, Gorman, Caffrey & Witous, of Chicago (James T. Ferrini and Thomas H. Ryerson, of counsel), for appellee Skokie Valley Community Hospital.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

Charlene Tatosian, administrator of the estate of Lynn Marsh, deceased (plaintiff), brought suit against Dr. Stewart Freifeld, Dr. Francisco Alzes, Dr. Gunars Graudins, and Skokie Valley Community Hospital (defendants), for the wrongful death of the decedent. The trial court dismissed the case finding the "cause has been settled by agreement of the parties." Plaintiff filed a petition to vacate the dismissal order pursuant to section 72 of the Civil Practice Act. (Ill. Rev. Stat. 1977, ch. 110, par. 72.) Defendants filed motions to strike the petition. Plaintiff filed an amended petition supported by her affidavit and an affidavit of her attorney. The trial court denied plaintiff's amended petition. Plaintiff appeals.

Plaintiff contends the case should be reinstated because she did not consent to the settlement or the dismissal arranged by her attorney and defendants' attorneys. She claims her consent was essential to the settlement. Plaintiff urges she has a meritorious cause of action. Plaintiff also contends due diligence is not necessary for reinstatement of this cause; but, in any event, she has been diligent in seeking relief under these circumstances.

Defendants contend plaintiff failed to prove she has a meritorious claim and failed to exercise due diligence in presenting her section 72 petition. Defendants urge plaintiff has not proved any fact which would have prevented entry of the dismissal order.

This court finds the issue of diligence dispositive. Therefore, we need not consider the remaining issues.

The decedent left surviving her husband, Thomas Marsh, and two minor children. The relationship among the plaintiff, Thomas Marsh, and the decedent is unclear. Briefs filed by both parties disclose plaintiff was the sister of the decedent and sister-in-law of Thomas Marsh. However, in his deposition, Thomas Marsh stated plaintiff is his sister and was a friend of his wife, the decedent.

Lynn Marsh died on July 12, 1975. Plaintiff filed her amended complaint on November 10, 1975. On February 8, 1977, Skokie Valley Community Hospital moved to dismiss based on plaintiff's failure to supply an expert medical witness. On April 15, plaintiff's original attorney wrote to all defendants informing them of the identity of plaintiff's expert witness. This motion to dismiss was never ruled upon.

In August 1977, plaintiff was informed by Thomas Marsh that this cause was in the process of settlement, but no terms were discussed. On August 18 or 19, 1977, the case was settled and dismissed. Plaintiff alleged her original attorneys represented to the court that the parties involved had settled the matter by agreement. Actually, plaintiff at this time did not take part in the settlement.

On or about September 6, 1977, plaintiff received papers to sign from Thomas Marsh regarding a settlement for $2000. About September 22, 1977, plaintiff consulted with another attorney, Herbert Carlson, who advised her if she could not in good conscience agree to a settlement, she should refuse it and so inform her original attorney. On that same date, plaintiff informed her original attorney she would not agree to the settlement and she wished the case to proceed.

About October 5, 1977, the original attorney informed plaintiff the case had been dismissed on August 19. He told her the medical expert previously secured was not available to testify and if the cause were pursued and if malpractice were not found to exist, plaintiff could be countersued. Plaintiff thereupon terminated the employment of her original attorney.

Plaintiff then sought another attorney. Attorney Carlson agreed to investigate the matter and seek an expert medical opinion. Attorney Carlson advised plaintiff he could not undertake representation until he had obtained expert opinion. On April 25, 1978, Carlson received a favorable preliminary medical report and agreed to represent the plaintiff. In July 1978, Dr. Walter S. Feldman agreed to testify on plaintiff's behalf.

On August 15, 1978, plaintiff filed her petition under section 72 to vacate the dismissal order and to reinstate the cause. She filed her amended petition on October 13, 1978.

· Section 72 of the Civil Practice Act provides a procedure whereby final orders may be vacated more than 30 days after their entry. (Ill. Rev.

Stat. 1977, ch. 110, par. 72.) The disposition of the petition is within the sound discretion of the trial court. An abuse of such discretion is a prerequisite to reversal of the order. (*In re Estate of Reilly* (1979), 68 Ill. App. 3d 906, 912, 386 N.E.2d 462.) The legal requirements for this type of petition are well set forth in *Schmidt v. Siegal Trading Co.* (1979), 72 Ill. App. 3d 611, 614, 391 N.E.2d 32. The absolute necessity for the exercise of diligence by the petitioner is set out in *Diacou v. Palos State Bank* (1976), 65 Ill. 2d 304, 357 N.E.2d 518.

In the instant suit, plaintiff learned on October 5, 1977, the case had previously been dismissed. She did not file her petition to vacate the dismissal order until August 15, 1978. More than a 10-month delay had ensued.

The Illinois cases which hold fatal absence of diligence existed after a comparable period of delay are numerous. The following is a sampling of these authorities with a note as to the length of delay involved in each:

*Westphall v. Trailers, Campers, Campgrounds, Inc.* (1979), 76 Ill. App. 3d 205, 208, 392 N.E.2d 741—delay of approximately two months.

*Lammert v. Lammert Industries, Inc.* (1977), 46 Ill. App. 3d 667, 677, 360 N.E.2d 1355—delay of more than six months.

*Department of Public Works and Buildings v. O'Hare International Bank* (1976), 44 Ill. App. 3d 934, 936, 358 N.E.2d 1308—delay of slightly more than three months.

Plaintiff attempts to justify her lack of diligence and her delay in filing her petition on the ground she was fearful to proceed because of the possibility of a malicious prosecution suit against her if she were unsuccessful in the suit. Plaintiff relies upon the difficulty she encountered in obtaining a medical expert to testify. Plaintiff's petition filed August 15, 1978, did not state these reasons. Plaintiff alleged only she "has had an extremely difficult time in retaining counsel to prosecute this because * * *." Plaintiff's amended petition filed October 13, 1978, states she was told by her original attorney "that if the matter were pursued further she could possibly be countersued if medical malpractice were not found to exist." Thus, it appears neither plaintiff's original petition nor her amended petition ascribed her delay to the lack of a medical expert. She alleged the attorney also told her the medical expert previously secured was not available for testimony.

As regards fear of a countersuit, plaintiff points out in her brief she was motivated by and had reason for her fear because of a trial court judgment allowing damages in favor of a doctor and against an unsuccessful suitor in a medical malpractice case. It is true that this judgment was not reversed until September 14, 1978, which was close to one month after the filing of plaintiff's original section 72 petition in the case at bar. *Berlin v. Nathan* (1978), 64 Ill. App. 3d 940, 381 N.E.2d 1367,

*appeal denied* (1979), 72 Ill. 2d 581, *cert. denied* (1979), 828 U.S. 444, 62 L. Ed. 2d 36, 100 S. Ct. 53.

■■ However, as counsel for defendants point out, there were two previous opinions by this court dismissing attempted suits by physicians against their former patients and attorneys who had allegedly prosecuted malpractice cases against the doctor with lack of success. These cases are *Lyddon v. Shaw* (1978), 56 Ill. App. 3d 815, 372 N.E.2d 685 (opinion filed January 23, 1978), and *Pantone v. Demos* (1978), 59 Ill. App. 3d 328, 375 N.E.2d 480 (opinion filed April 14, 1978). The opinions in both of these cases were filed months before plaintiff filed her section 72 petition in the instant case on August 15, 1978. We conclude plaintiff's lack of due diligence should not be excused for either of the stated reasons.

■ We cannot find in this record any unfair, unjust, or unconscionable circumstances and no attempt by defendants to take unfair advantage of plaintiff in this regard. (See *Norvell v. Howard* (1979), 72 Ill. App. 3d 698, 702, 391 N.E.2d 101; *Lutz v. Lutz* (1977), 55 Ill. App. 3d 967, 970, 371 N.E.2d 348.) We conclude this record presents a total lack of due diligence which requires us to affirm the dismissal of the section 72 petition.

Order affirmed.

McGLOON and CAMPBELL, JJ., concur.