463 So.2d 468 (1985)
AUTO-OWNERS INSURANCE COMPANY, etc., Appellants,
v.
Eugene James HOOKS and Var Heyl Lincoln-Mercury, Inc., Appellees.
Nos. AU-70, AU-473.
District Court of Appeal of Florida, First District.
February 7, 1985.
*471 L. Floyd Price, Bradenton, for appellants.
William C. Andrews, Gainesville, for appellee/Hooks.
Charles G. Felder and Robert E. Roundtree, Jr., of Clayton, Johnson, Quincey, Ireland, Felder & Gadd, Gainesville, for appellee/Var Heyl Lincoln-Mercury, Inc.
SMITH, Judge.
Appellant Auto-Owners Insurance Company, Inc. ("Auto-Owners") brings this consolidated appeal from a final judgment for compensatory and punitive damages pursuant to jury verdict in litigation arising out of Auto-Owners' wrongful replevin of an automobile. Both appellees, Eugene James Hooks ("Hooks"), owner of the automobile, and Var Heyl Lincoln Mercury, Inc. ("Var *472 Heyl"), who sold the car to Hooks, received compensatory and punitive damages. Appellant contends that the punitive damage award to Hooks was erroneous, and that Var Heyl was improperly awarded both compensatory and punitive damages. Appellant further maintains that the court erred in awarding attorney's fees. We reverse the judgment in favor of Hooks for punitive damages, and reverse the judgment in favor of Var Heyl as to both compensatory and punitive damages.[1] We affirm the awarding of attorney's fees to both appellees, but reverse and remand for redetermination of the amounts awarded.
The litigation below had its genesis in February of 1981, when Clarence Loflin, an insured of Auto-Owners, transferred title of his 1980 Lincoln Continental automobile to Troy Arnold. Mr. Arnold gave in payment what subsequently turned out to be a forged cashier's check. As a result, Auto-Owners was required to reimburse Loflin for his monetary loss, and became subrogated to whatever rights Loflin had in the automobile. After Mr. Arnold's purchase, the automobile was transferred in rapid succession to a number of auto companies (four, to be exact, including Var Heyl, in a period of seven days), ending its journey among auto dealerships with Var Heyl.
In March 1981, Hooks purchased the automobile from Var Heyl, receiving title and possession. Later, on July 7, 1981, Auto-Owners filed a complaint for replevin of the automobile against Hooks.[2] On July 9, 1981, Auto-Owners applied for and received from the circuit court an ex parte prejudgment writ of replevin under Section 78.068, Florida Statutes (1981), after posting a bond for $26,000 as security for any damages sustained by Hooks by reason of the writ being wrongfully obtained. The Alachua County Sheriff's Department took possession of the automobile from Hooks eight days later, and subsequently delivered it to Auto-Owners.
On July 24, 1981, Hooks filed a motion to dissolve the prejudgment writ of replevin, which was denied by the trial court. Hooks then filed a third party complaint against Var Heyl for breach of warranty of title. Var Heyl, in turn, filed an amended answer asserting claims against Auto-Owners under Chapter 78, and for negligence and malicious prosecution, seeking compensatory and punitive damages, costs and attorney's fees. Later, Hooks filed a counterclaim against Auto-Owners seeking compensatory and punitive damages, as well as attorney's fees and costs, alleging that Auto-Owners improperly obtained the prejudgment writ of replevin.
On Var Heyl's motion, the trial court, on December 30, 1981, dissolved the prejudgment *473 writ of replevin, and granted summary judgment for Hooks and Var Heyl, and against Auto-Owners, based upon its action in wrongfully obtaining the writ of replevin. A jury trial was held on the issue of damages, resulting in verdicts for Hooks and Var Heyl for compensatory and punitive damages (see footnote 1, supra).
On appeal, Auto-Owners first contends that the trial court erred in allowing the punitive damages issues to go to the jury. The law is well settled that in order to be entitled to an award of punitive damages, a complaining party must show that the defendant acted with malice, moral turpitude, wantonness, willfulness, or reckless indifference to the rights of others. Walsh v. Alfidi, 448 So.2d 1084, 1086 (Fla. 1st DCA 1984). Punitive damages may not be assessed on the basis of mere negligence, U.S. Concrete Pipe Co. v. Bould, 437 So.2d 1061, 1064 (Fla. 1983). Even gross negligence, by itself, will not support the award of punitive damages. White Construction Co., Inc. v. Dupont, 455 So.2d 1026 (Fla. 1984); Smith v. Brantley, 455 So.2d 1063 (Fla. 2d DCA 1984). In ruling on Auto-Owners' motion for a directed verdict, the trial court was required to evaluate the evidence in the light most favorable to appellees, drawing every reasonable inference flowing from the evidence in appellees' favor. On the other hand, Auto-Owners' motion for a directed verdict should have been granted if there was no evidence upon which the jury could legally base a verdict for such damages in favor of appellees. Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114, 1121 (Fla. 1984); Pritchett v. Jacksonville Auction, Inc., 449 So.2d 364 (Fla. 1st DCA 1984).
Judged by the foregoing standards, we conclude that Auto-Owners' motion for directed verdict on the issue of punitive damages should have been granted. As the basis for punitive damages, appellees emphasized, both here and below, the testimony of James W. Campbell, claims representative for Auto-Owners who served as its representative in this action. Mr. Campbell admitted that before filing Auto-Owners' complaint for replevin, he made no contacts with Hooks directly, and made no determination that Hooks was engaged in, or was about to engage in, any conduct that would place the car in danger of removal, concealment or destruction. Nothing in Auto-Owners' complaint, however, implies that any such direct contact was made with Hooks, nor is there any direct or indirect implication that Auto-Owners had actual knowledge of any fact tending to show that Hooks intended to dispose of the car in any manner. Campbell's further testimony explained that the mere fact that title had changed hands four times prior to being transferred to Hooks, and the fact that Hooks had an apparently transferable title to the car (which Auto-Owners thought it rightfully owned), making it possible for Hooks to transfer the car to yet another party, gave Auto-Owners reason to fear that the car might change ownership again prior to clarification of the rights of the parties. Upon comparison of Campbell's testimony with the allegations of the sworn complaint (see footnote 2, supra), we conclude that these allegations are not only consistent with Campbell's testimony; they are not susceptible to any other reasonable interpretation. The complaint contains no factual misstatements or misrepresentations, nor does it allege or insinuate any improper conduct on the part of Hooks, nor of Var Heyl, for that matter.
Upon close examination of the statute, Section 78.068(1), we note that it authorizes the issuance of a prejudgment writ "when the nature of the claim and the amount thereof, if any, and the grounds relied upon for the issuance of the writ clearly appear from specific facts shown by the verified petition... ." The complaint accurately set forth the facts relied upon by Auto-Owners to satisfy this requirement. Further, subsection (2) of the statute provides:
2. This prejudgment writ of replevin may issue if the court finds, pursuant to subsection (1), that the defendant is engaging in, or is about to engage in, conduct that may place the claimed property *474 in danger of destruction, concealment, waste, removal from the state, removal from the jurisdiction of the court, or transfer to an innocent purchaser during the pendency of the action or that the defendant has failed to make payment as agreed. (emphasis supplied)
Section 78.068(2), Florida Statutes. The above-quoted subsection, as the emphasized words indicate, thus imposes a burden upon the trial court to determine the sufficiency of the facts alleged. Here, the complaint did not allege facts sufficient to meet this statutory standard, not because of any misstatement of the facts, but because of Auto-Owners (and the trial court's) erroneous assumption concerning the law applicable to those facts, particularly the legal effect of the forged cashier's check involved in the insured's sale of the vehicle, in relation to the rights of a subsequent good faith purchaser under the motor vehicle title transfer laws.[3]
Admittedly, the court below found that Auto-Owners wrongfully obtained the issuance of the prejudgment writ. Auto-Owners does not its contest the correctness of this ruling, nor its consequent liability for compensatory damages to Hooks as provided in Chapter 78, Florida Statutes. The issue, so far as the punitive damage awards are concerned, is whether the circumstances would permit a jury finding that Auto-Owners acted in wanton or reckless disregard of the rights of appellees. We hold that they would not. The actions of Auto-Owners were directed exclusively to its attempt to avail itself of a statutory remedy. Any mistake or misapprehension of the law involved, according to the specific directive of the statute (Section 78.068(2)), was a matter for consideration by the trial judge before issuance of the prejudgment writ. Absent a showing that Auto-Owners made false allegations, either deliberately or with reckless disregard for the rights of appellees  as opposed to legally unsound or insufficient allegations  the mere fact that the trial judge whose duty it was to protect the rights of appellees under the law erroneously granted the prejudgment writ cannot, in our view, afford the basis for assessment of punitive damages.
The theory upon which appellees' claims to punitive damages proceeded would extend the law allowing the award of punitive damages to unprecedented extremes. This theory would open the door to an award of punitive damages in every instance in which a party is ultimately unsuccessful in his resort to the court in pursuit of a legal remedy. Cf., Medel v. Republic Nat. Bank of Miami, 365 So.2d 782, 785 (Fla. 3d DCA 1979), cert. den., 376 So.2d 75 (Fla. 1979). The drastic sanction of punitive damages is particularly inappropriate here since appellees, pursuant to the terms of the very statute under which they construct their legal theory, could have avoided the consequences they complain of by the simple act of posting a bond and securing the release of the replevied automobile. Section 78.068(4), Florida Statutes. Of perhaps even more fundamental significance, appellee Hooks could have secured an order immediately (as Var Heyl later did) dissolving the prejudgment writ by citing to the trial court the correct and controlling law, or, if his counsel did cite the correct law, by doing it more convincingly. Accordingly, submission of the punitive *475 damage issue to the jury, and the entry of judgment in favor of Hooks and Var Heyl for such damages, was error.[4]
Auto-Owners next contends that the trial court erred in allowing any and all of the legal claims of appellee Var Heyl to go to the jury and in giving Var Heyl's malicious prosecution jury instruction. Var Heyl based its claims of negligence and malicious prosecution upon Auto-Owners' invocation of Section 78, Florida Statutes, against appellee Hooks. Auto-Owners' point here is well taken. Regarding the negligence claim, Var Heyl is evidently contending that Auto-Owners' investigation into the status of the sought-after automobile in Hooks' possession was negligently performed, and hence made the very decision to seek a writ of replevin from the trial court a negligent act. Assuming, arguendo, that the facts adduced below establish negligence on Auto-Owners' part for its conduct of this lawsuit, we nevertheless find that Var Heyl fails to state a cause of action.
Although there is little reported case law on the subject, the few courts that have addressed the question have declined to impose liability on a person who "negligently" initiates a civil action.[5] Thus, in Tappen v. Ager, 599 F.2d 376 (10th Cir.1979), it was held that Kansas law did not impose a duty on litigants to utilize reasonable care either in filing a lawsuit or investigating its basis. Similarly, the court in Drago v. Buonagurio, 109 Misc.2d 192, 439 N.Y.S.2d 818 (S.Ct., S.T. 1981), aff'd, 89 A.D.2d 682, 454 N.Y.S.2d 37 (A.D. 3d Dept. 1982), declined to recognize a cause of action for "negligent commencement" of a medical malpractice suit. The court noted that "[s]ubjection to civil litigation improperly instituted or maintained through the negligence of a suitor is part of the price citizens pay for a free society... ." The court also opined that recognition of the plaintiff's novel claim would "unduly inhibit the recourse to the courts for the resolution of honest disputes." 439 N.Y.S.2d at 820. Finally, in Pantone v. Demos, 59 Ill. App.3d 328, 16 Ill.Dec. 607, 375 N.E.2d 480 (1978), the court refused to allow a cause of action for "willfully and wantonly" filing a lawsuit. Pointing out that at common law a party was not liable for instituting any suit where the court had subject-matter jurisdiction and the party had not acted maliciously or without probable cause, the Pantone court found that the public has an interest in free access to the courts, and since
... the very purpose of a court of law is to determine whether an action filed by a party has merit, ... we refuse to recognize a rule which would render a litigant ... liable in tort for negligently (or even, willfully and wantonly) failing to determine in advance that which, ultimately, only the courts could determine.
16 Ill.Dec. at 611, 375 N.E.2d at 484, quoting Lyddon v. Shaw, 56 Ill. App.3d 815, 14 Ill.Dec. 489, 494, 372 N.E.2d 685, 690 (Ill. *476 App. 1978). We adopt the Pantone court's reasoning as our own and hold that, on the facts before us, Var Heyl cannot maintain a cause of action for "negligent initiation of a lawsuit."
Var Heyl's malicious prosecution claim is equally lacking in merit. For one thing, Var Heyl prematurely filed this action before the original action against Hooks was complete. Waite v. Ward, 413 So.2d 830 (Fla. 1st DCA 1982); Cazares v. Church of Scientology of Cal., 444 So.2d 442, 447 (Fla. 5th DCA 1983); Blue v. Weinstein, 381 So.2d 308 (Fla. 3d DCA 1980). Moreover, in order to maintain a cause of action for malicious prosecution, a plaintiff must establish six elements:
(1) the commencement or continuation of an original civil or criminal judicial proceeding;
(2) its legal causation by the present defendant against the plaintiff;
(3) its bona fide termination in favor of the plaintiff;
(4) the absence of probable cause for such prosecution;
(5) the presence of malice; and
(6) damages conforming to legal standards resulting to the plaintiff. (citation omitted)
Gause v. First Bank of Marianna, 457 So.2d 582, 584 (Fla. 1st DCA 1984). Failure to plead and prove any element is fatal to the plaintiff's claim. Id. As Auto-Owners correctly points out, two elements of a malicious prosecution action are missing here. First, Var Heyl was not a defendant in the original proceedings; appellee Hooks was the sole defendant (other than Ford Motor Credit Company, as lien holder) in the action initiated by Auto-Owners to secure a prejudgment writ of replevin. Var Heyl was brought into the case as a third party defendant by Hooks. Although Var Heyl attempts to establish itself as a party to the proceedings below within the meaning of Chapter 78, this statute offers no language supportive of Var Heyl's position so far as a malicious prosecution claim is concerned. In any event, we have been furnished no authority for the proposition that the right to a malicious prosecution action extends to parties against whom the plaintiff has initiated no legal proceeding. See 52 Am.Jur.2d, Malicious Prosecution, § 56:
The right to bring an action for malicious prosecution is personal to the person directly aggrieved, so that the action cannot be maintained by one who was not a party to the allegedly malicious prosecution.
Cf. Atlantic Plaza Partnership v. Daytona Sands, Inc., 357 So.2d 761 (Fla. 1st DCA 1978) (where party filing malicious prosecution counterclaim was not a party to the initial lawsuit, plaintiff there could not be held liable regarding malicious prosecution claim asserted against it).
Finally, it is clear that colorable probable cause existed for the action as originally begun by Auto-Owners, as the trial court below initially granted the writ and denied Hooks' motion to dissolve. The law is clear that, where the facts are undisputed, the issue of whether probable cause for initiation of an action exists is a question of law for the trial court. Gause v. First Bank of Marianna, supra, at 584; see also Bell v. Anderson, 414 So.2d 550, 551 (Fla. 1st DCA 1982), pet. for rev. den., 424 So.2d 760 (Fla. 1982). The trial court found probable cause for Auto-Owners to initiate and secure a prejudgment writ of replevin. That the trial court subsequently saw fit to correct its own error when presented with different law does not mean that the initial probable cause finding may simply be ignored.[6] Totally absent from *477 Hooks' and Var Heyl's arguments is any recognition of the fact that they were dealing, in effect, with a "stolen" car, and that, but for the beneficence of the Legislature in determining that antecedent maleficence should not be visited upon subsequent title holders, they would have found themselves in much the same predicament as Auto-Owners and its insured. Accordingly, both the compensatory and punitive damage awards to Var Heyl and against Auto-Owners were in error. Var Heyl was entitled, however, to judgment against Hooks pursuant to its counterclaim for the rental of a substitute vehicle to Hooks while the automobile was held by Auto-Owners; and Hooks was entitled to receive and presumably did receive reimbursement for this expense as a part of his compensatory damage award against Auto-Owners.
Lastly, Auto-Owners contends that the trial court erred in awarding attorney's fees to Var Heyl, and in considering the punitive damages recovery in awarding attorney's fees to appellee Hooks. Regarding the fees awarded to Hooks, it is clear from the record below that Hooks' recovery of punitive damages was a factor considered in determining a reasonable amount both by the experts and by the trial court. Since we have reversed the punitive damage award, the fees awarded to Hooks' attorney must be reversed and remanded for rehearing and award of a fee that does not take into account the erroneous punitive damages award. Venema v. Tost, 426 So.2d 1028 (Fla. 3d DCA 1983).
Regarding the attorney's fees awarded Var Heyl, while we find that it was not error to award fees, the amount actually awarded had an improper basis. As to the propriety of any award to Var Heyl, we believe recovery is here sanctioned by North American Van Lines, Inc. v. Roper, 429 So.2d 750 (Fla. 1st DCA 1983), which held that
where the wrongful act of the defendant has involved the claimant in litigation with others, and has placed the claimant in such relation with others as makes it necessary to incur expenses to protect its interest, such costs and expenses, including reasonable attorney's fees upon appropriate proof, may be recovered as an element of damages.
429 So.2d at 752, quoting Baxter's Asphalt, Etc. v. Liberty County, 406 So.2d 461, 467 (Fla. 1st DCA 1981), quashed on other grounds, 421 So.2d 505 (Fla. 1982). Var Heyl clearly would not have been involved in litigation with Hooks except for Auto-Owners' action in securing a prejudgment writ of replevin, which was "obtained wrongfully" under the replevin statute, Section 78.068(1)-(3), Florida Statutes (1981). Upon being made a third-party defendant by Hooks, Var Heyl was compelled to defend title to the automobile. Furthermore, as a third party defendant Var Heyl was, under Rule 1.180(a), Florida Rules of Civil Procedure, entitled to pursue any defenses to Auto-Owners' replevin action that Hooks could assert. Var Heyl did directly and successfully pursue such defenses by moving for and obtaining dissolution of the prejudgment writ of replevin, and by obtaining a summary judgment finding Auto-Owners liable for wrongfully obtaining the issuance of the writ.
However, attorney's fees are recoverable under the "wrongful act" exception recognized in North American Van Lines only to the extent that they are incurred in litigation with a third party in connection with the dispute between the party seeking fees and the third party. 22 Am.Jur.2d, Damages, § 166; see also Warren v. McLouth Steel Corp., 111 Mich. App. 496, 314 N.W.2d 666 (1981) ("... reasonable expenses incurred in the primary litigation created by the wrongful acts of another may be recoverable but the expenses incurred in litigation with the actual *478 wrongdoer are not ..."). Here, Var Heyl can only recover those expenses incurred in defending the breach of title warranty claim brought against it by Hooks; that is, its expenses reasonably incurred until such time as the court granted summary judgment against Auto-Owners on its replevin claim. Any expenses Var Heyl generated in pursuing its malicious prosecution and negligence claims against Auto-Owners were not incurred "in connection with" its defense of Hooks' claim against it, and hence are not recoverable in this action. Accordingly, the award of attorney's fees to Var Heyl must be reversed and remanded for redetermination.
Both appellees have filed petitions for attorney's fees in this court pursuant to Rule 9.400, Florida Rules of Appellate Procedure. These petitions are denied because neither appellee can be considered a "prevailing party" within the meaning of Florida Rule of Appellate Procedure 9.400(a). Dept. of Labor & Employment Security v. Am. Bldg. Main., 449 So.2d 932, 933 (Fla. 1st DCA 1984); see also Thaller v. Waterford Point Condominium Apartments, Inc., 437 So.2d 248 (Fla. 4th DCA 1983).
The portions of the judgment awarding punitive damages to Hooks, and awarding compensatory and punitive damages to Var Heyl, are reversed and set aside. The award of attorney's fees to Hooks and Var Heyl is affirmed, except as to amount, and the cause is remanded for redetermination of the awards and entry of revised judgment as directed in this opinion.
AFFIRMED in part, REVERSED in part, and REMANDED.
MILLS and NIMMONS, JJ., concur.
NOTES
[1] The jury verdict awarded $12,815.35 compensatory and $100,000 punitive damages to Hooks; and $5,000 compensatory and $25,000 punitive damages to Var Heyl. In post-trial proceedings, the trial court also ordered payment of attorney's fees to Hooks and Var Heyl.
[2] Auto-Owners' complaint set forth in detail the facts upon which it based its claim as subrogee, including Arnold's purchase of the automobile from its insured, Loflin, by means of a forged cashier's check. Because of this, the complaint alleged, the automobile was secured by Arnold "by fraud, misrepresentation and theft." The complaint further related "upon information and belief" that through several intervening transfers, defendant Hooks was in possession of the car. The complaint then alleged that Auto-Owners "is the rightful owner" of the vehicle, and that the "entity" (unnamed) from which defendant Hooks took title "had no legal title," and could not transfer legal title to Hooks. It alleged further that Hooks' detention was wrongful, "though defendant [Hooks] may well believe ... otherwise," also based on Auto-Owners' information and belief. The body of the complaint then concluded with the following paragraph which provides the basis for a great deal of the verbiage appearing in the record of the trial below, and in the briefs and argument on appeal:

12. Due to the fact that Defendant, HOOKS, is believed by Plaintiff to hold a Florida Automobile Title Certificate to the said vehicle, although invalid, it would be possible for Defendant, HOOKS, to transfer the vehicle to an innocent purchaser during the pendency of this action, which action may place the claimed property in danger of destruction, concealment, waste, removal from the state, removal from the jurisdiction of this Court, which would at best further frustrate Plaintiff's rights, unduly complicate this litigation, and require the adding of additional and, at this time, unknown parties to this action.
[3] In issuing the prejudgment writ, and in denying Hooks' July 24, 1981 motion to dissolve, the trial court obviously relied upon case law predating Florida's Uniform Commercial Code, citing in the order of denial Federal Insurance Company v. Mercer, 237 So.2d 243 (Fla. 4th DCA 1970); Avis Rent-A-Car System, Inc. v. Harrison Motor Co., 151 So.2d 855 (Fla. 2d DCA 1963); and Home Insurance Co., Etc. v. Small, 389 So.2d 1255 (Fla. 1st DCA 1980). The trial judge later found, and so stated in the record, that the law had changed upon adoption of the Uniform Commercial Code. See, Florida Department of Corrections v. Blount, Etc., 411 So.2d 930 (Fla. 1st DCA 1982). It is pertinent to note that the trial court, during the jury charge conference out of the jury's presence, stated: "I'm going to be quite candid with you, gentlemen. If I had been shown the correct law at the time I issued that writ, I never would have issued it. I was not. The law changed 180 degrees. I was shown the old law and upon that, that writ was issued."
[4] To the extent that the punitive damage claims against Auto-Owners may be considered analogous to an action for abuse of process, some guidance may be afforded by reference to the principles governing such actions, which were recently stated in Bothmann v. Harrington, 458 So.2d 1163, 1169 (Fla. 3d DCA 1984):

Abuse of process involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed .. . (citation omitted). For the cause of action to exist there must be a use of the process for an immediate purpose other than that for which it was designed. (footnote omitted) There is no abuse of process, however, when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or ulterior purpose... . (emphasis in original).
[5] The Florida Supreme Court has pointed out that Florida courts have never recognized a separate tort for negligently swearing out a warrant for arrest, and that such cases may be brought only in the form of civil suits for malicious prosecution. Pokorny v. First Federal Savings & Loan Association of Largo, 382 So.2d 678, 683 (Fla. 1980). See also Jestic v. Long Island Savings Bank, 81 A.D.2d 255, 440 N.Y.S.2d 278 (A.D. 2d Dept. 1981), in which the court rejected an asserted action for "negligent prosecution" in an action by an employee who alleged that a negligent investigation conducted by her employer, the results of which were turned over to the FBI, resulted in her indictment and subsequent acquittal on embezzlement charges.
[6] See footnote 3, supra. Under the circumstances presented here it cannot reasonably be argued that Auto-Owners' legal position was so patently unsound as to in itself suggest a reckless indifference to or callous disregard for the law. That the experienced trial judge not only agreed with Auto-Owners' position initially but adhered to the same view even after an adversary hearing would tend to dispel any such notion. We note that the Third District, in Bothmann v. Harrington, 458 So.2d 1163 (Fla. 3d DCA 1984) (cited in this opinion, supra), in a case involving disparagement of title or property by the improper filing of a notice of lis pendens, alluded to the distinction between "an improper filing in a procedural sense," and a "wrongful filing in a substantive sense," holding in that case that only the latter will support an action for disparagement of property, "because only it meets the requisite falsehood element of the action." 458 So.2d at 1168. The same distinction, in our opinion, may be used to characterize Auto-Owners' filing for a prejudgment writ of replevin.