414 So.2d 535 (1982)
GESCO, INC., the Chase Manhattan Bank, N.A., a National Banking Association and Seaboard Surety Company, a New York Corporation Authorized to Do Business in the State of Florida, Appellants,
v.
EDWARD L. NEZELEK, INC., and the Travelers Indemnity Company, Appellees.
EDWARD L. NEZELEK, INC. and the Travelers Indemnity Company, Appellants,
v.
GESCO, INC., the Chase Manhattan Bank, N.A., a National Banking Association, and Seaboard Surety Company, a New York Corporation Authorized to Do Business in the State of Florida, Appellees.
Nos. 80-1178, 80-2008.
District Court of Appeal of Florida, Fourth District.
April 14, 1982.
Rehearings Denied June 16, 1982.
*537 Karl W. Adler of Adler, Tolar & Adler, Fort Lauderdale, for Gesco, Inc.
Robert H. Haggerty, New York City, for Chase Manhattan Bank and Seaboard Sur. Co.
Wayne A. Cypen of Cypen & Cypen, Miami Beach, for Nezelek and Travelers.
PER CURIAM.
This is a consolidated appeal from both a final judgment and a post judgment order in an action on a construction contract and a mechanic's lien. Gesco, Inc. is the owner-developer of a condominium around which this controversy centers. Chase Manhattan Bank is the construction lender and the principal on a transfer bond and Seaboard Surety Company is the surety on the transfer bond. These parties appeal from a final judgment rendered in favor of Edward L. Nezelek, Inc., the project's contractor. Nezelek appeals from a stay order prohibiting execution upon post judgment orders granting it attorneys fees and costs.
Gesco filed suit against Nezelek alleging breach of a condominium construction contract and sought damages for alleged substitution of inferior materials, defective construction and delay in completion. Nezelek denied these charges and asserted several affirmative defenses, among which was a claim that Gesco was solely responsible for the construction delays. Nezelek also counterclaimed to foreclose on its $1,117,614.92 mechanics lien which represented the alleged balance due under the contract. Nezelek joined Chase Manhattan Bank and Seaboard Surety Company in this action because they had posted the bond which transferred the lien. A non-jury trial followed.
The construction contract guaranteed that $6,500,000 would be advanced in monthly installments equal to 90% of the value of the work completed at the end of each requisition period, less previous payments, with the 10% retainage due thirty days after substantial completion of all work and compliance with various other requirements of the agreement. Under the terms of the contract "time was of the essence." All work was to be substantially completed within fourteen months of the project's commencement. It was further provided that this period would be extended only for delays attributable to Gesco, its architect or unavoidable casualties. However, in order that these delays inure to the contractor's benefit, the contract required Nezelek to request an extension, in writing, within fifteen days of the delay. Otherwise, the claim was deemed waived and the completion date remained unaltered.
The condominium was not completed on schedule. A ninety day temporary certificate of occupancy, for the first ten floors of the building, was issued six months late. The final certificate of occupancy was issued three months after that. All told, the condominium was completed nine months after the date called for by the contract. *538 (Construction began on or about June 20, 1973. The final certificate of occupancy was issued May 12, 1975.)
Gesco ceased making payments on the contract after January, 1975. On May 8, 1975, Nezelek filed a lien for the entire amount it claimed was due. The lawsuit upon which this appeal is based followed shortly thereafter.
The trial, even without a jury, lasted twelve days. On January 7, 1980, the court entered final judgment in favor of Nezelek. The court found that Nezelek's lien was valid; that Gesco suffered no damage as a result of the delay in the building's completion; that there was no basis in evidence to apportion the delay between the parties; that Gesco had authorized the use of the materials utilized by Nezelek; and that Nezelek was responsible for only minor construction defects. The court also found that Nezelek was entitled to costs and attorneys fees but reserved jurisdiction to determine the amount of such award at a later date.
Following the denial of their motion for rehearing, appellants timely filed their notice of appeal. Subsequently, the lower court awarded Nezelek attorneys fees of $180,000.00. The court also assessed costs of $4,038.94 against Gesco and Chase Manhattan Bank. Seaboard Surety Company was assessed costs of $100.00. Upon motion of appellants, the court granted a stay of execution upon these awards pending final resolution of all appeals. Nezelek appeals, contesting the propriety of the stay.
Gesco now contends that Nezelek's lien was premature and therefore should be considered fraudulent and invalid pursuant to Section 713.31, Florida Statutes. However, as this argument was not pursued below, it may not now be raised on appeal. See, Ronal Builders, Inc. v. Powell Brothers, Inc., 328 So.2d 869 (Fla. 4th DCA 1976), cert. denied, 339 So.2d 1171 (Fla. 1976). Likewise, Gesco's argument that Nezelek did not comply with the affidavit requirements of Section 713.06(3)(d)(1), Florida Statutes, was not raised below and is therefore deemed waived for purposes of appeal.
Gesco further contends that the court erred by not finding Nezelek responsible for any delays in the completion of the condominium project. It relies upon the contract provisions which required the contractor to request, in writing, extensions for delays caused by Gesco's actions. The record clearly establishes that no such requests were tendered. However, once again, this argument was not raised below. Nezelek affirmatively pled that all delays in construction were attributable to Gesco. If Gesco's position was that Nezelek waived the right to hold it responsible for delay, by virtue of Nezelek's failure to request extensions, then Gesco was obligated to so inform the trial court. Having failed to do so, by either pleading or argument, Gesco is precluded from raising this issue on appeal.
Although the record demonstrates, and the trial court found, that Nezelek was responsible for some of the delay, the court was nevertheless correct in concluding that Gesco's evidence did not establish a reasonable basis for apportioning responsibility for the total delay. See, United States, ex rel. Gray-Bar Electric Co. v. J.H. Copeland & Sons Construction, Inc., 568 F.2d 1159 (5th Cir.1978), cert. denied, 436 U.S. 957, 98 S.Ct. 3072, 57 L.Ed.2d 1123 (1978). See generally, 17A C.J.S. Contracts, § 502(4). The record clearly substantiates the trial court's finding that Gesco was responsible for considerable delay by such conduct as improperly locating a sewer easement, failing to timely supply lighting fixtures, and by allowing unit owners to effectuate changes in their apartments.
Gesco also challenges the lower court's refusal to allow its real estate appraiser to testify as to damages suffered by Gesco as a result of the delay in the condominium's completion. We have reviewed the proffered testimony, as well as the testimony of Gesco's accountant, and concur in the lower court's determination. The testimony of each witness was premised on several assumptions, which are not adequately supported by the record. Therefore, such testimony is not competent evidence on the *539 issue of damages. We are first asked to accept the premise that were it not for the delay many additional condominium units would have been sold. However, neither expert could identify any party who definitely would have purchased but for the delay. We are also asked to consider the relative market conditions at the time the contract called for completion and the time completion actually occurred. The appraiser's testimony was premised on the fact that the real estate market was suffering when the project was completed. This may well be true. However, there was no testimony offered which demonstrated that the particular condominium in question would be subject to general market conditions. The market conditions testified to concerned Broward County as a whole, whereas this building was located on the intra-coastal waterway in the City of Fort Lauderdale. We do not view testimony concerning condominium sales in such municipalities as Margate, Coral Springs, Davie, Hollywood, etc. as necessarily relevant to condominium sales occurring in a particular location of Fort Lauderdale.
Perhaps, if testimony was offered concerning sales of comparable condominium units, in comparable condominium projects, in comparable locations during the time in question, the relevance of Gesco's experts' testimony would be more apparent. However, as presented, the appraiser's testimony was not relevant and therefore properly excluded. Additionally, we find the appraiser's assumption that every sale of a condominium unit, following the six month delay, would have occurred six months earlier were it not for the delay untenable. There is no basis for assuming that a sale which occurred two years after the condominium was completed would have occurred six months earlier had the project been completed on schedule. Only those sales which would have taken place during the delay period, but were cancelled or precluded due to the delay, would be proper components of Gesco's damages. It should also be noted that even had the lower court erred by not accepting the appraiser's testimony, such error would be harmless. We have already upheld the trial court's decision not to apportion responsibility for delay. Therefore, exclusion of the appraiser's testimony did not prejudice Gesco. Such testimony, concerning damages from delay, is not relevant if responsibility for that delay cannot be determined.
Another dispute concerns damages resulting from defective construction of the condominium's parking deck. Gesco claims that Nezelek's failure to follow its specifications resulted in a leaking deck, and that in addition to the alleged defect in the deck, that this leakage also damaged cars which were parked below the deck. The parking deck was made of concrete. Concrete, as noted by the trial court, is a porous material which will crack and allow water to leak through. Gesco was well aware of this fact. Its own consultants advised waterproofing the deck. Nevertheless, Gesco elected not to do so. Therefore, the fact that the deck did crack, allowing water to leak through, should have come as no surprise to Gesco. Having ignored the warnings of experts as to the consequences of failing to waterproof, Gesco may not now recover the expense it incurred in reconstructing the deck. It is interesting to note that upon this reconstruction, Gesco employed the very waterproofing technique which it rejected initially. Gesco's other allegation concerning premature "shorring" by Nezelek is unsupported by the record. However, the record does contain evidence that Gesco may have contributed to its own injury by using heavy equipment on the deck.
The trial court found, and we agree, that the only defect for which Nezelek was responsible was its failure to waterproof certain planters located on the parking deck. However, contrary to Gesco's assertions otherwise, the record does not show that this failure was a factor in the overall damage to the deck. The court's award of $5,000 to Gesco for corrective work was proper and shall go undisturbed.
In order to avoid prolonged delay in the condominium's opening, a bond was posted *540 transferring Nezelek's security from the project. Chase Manhattan Bank, the principal on the transfer bond, and Seaboard Surety Co., the bond's surety, also challenge the final judgment. They argue that it cannot be sustained absent a showing that the mechanic's lien had priority over the bank's mortgage. They argue that in order to recover on the bond, Nezelek was required to show that the proceeds of a foreclosure sale would leave a surplus after payment of the mortgage. We disagree.
Pursuant to Section 713.24, Florida Statutes, the lien was transferred from real property to other security by the execution of a bond. This operates as a substitution of security pending a judicial determination as to the validity of the claim of lien. Resnick Developers South, Inc. v. Clerici, Inc., 340 So.2d 1194 (Fla. 4th DCA 1976). The transfer bond does not relieve the lien claimant from proving all the conditions precedent to perfection and enforcement of a lien against improved property. See, Resnick Developers South, Inc. v. Clerici, Inc., supra; McGuire v. Consolidated Electrical Supply, Inc., 329 So.2d 411 (Fla. 4th DCA 1976); Corry Construction Co. v. Hector Construction Companies, 363 So.2d 1125 (Fla. 1st DCA 1978). However, proof of priority over a mortgage is not such a condition precedent. The issue of priority is pertinent only after the validity and enforceability of the lien is established.
The contractor in this case has established all of the conditions necessary for recovery on the bond. This conclusion does not interfere with the mortgagee's security interest in the real property. See, Sayville Federal Savings & Loan Ass'n. v. Schons, 17 Misc.2d 54, 183 N.Y.S.2d 106 (1958). The mortgagee may still foreclose its mortgage. The final judgment was entered against the Chase Manhattan Bank as principal on the bond, not as mortgagee. Chase had decided not to foreclose its mortgage, instead, it opted to post the bond and remove the mechanic's lien from the property. Had the lien not been transferred, the judgment would have been subject to the mortgage.
The language of the bond clearly established an unconditional obligation for payment of the sum that the court determined was due the contractor. The bond did not limit the surety's obligation to that which the contractor might have collected absent execution of the bond. The trial court, therefore, did not err in allowing full recovery on the bond, notwithstanding that foreclosure of the mortgage might have extinguished the mechanic's lien had the bond not been executed. See, Gelder & Associates, Inc. v. St. Paul Fire & Marine Insurance Co., 34 N.C. App. 731, 239 S.E.2d 604 (1977), pet. for rev. den., 241 S.E.2d 843 (1978).
Appellants next contend that the trial court's order finding them jointly and severally liable for attorneys fees totalling $180,000 was erroneous. Initially, we note that no appeal was taken as to the order setting the fee amount. However, as appeal was taken from the final judgment in which the entitlement to attorneys fees was established, we have jurisdiction to review the propriety of that determination.
The amount of attorneys fees recoverable from Chase Manhattan Bank and Seaboard Surety Co. is controlled by statute. The applicable statutory provisions are Sections 713.24 and 713.29, Florida Statutes. Section 713.29 expressly provides that attorneys fees awarded under Chapter 713, Florida Statutes, are taxed as costs. Transfer bonds are governed by Section 713.24. This statute provides that a transfer bond executed by a surety:
be in an amount equal to the amount demanded in such claim of lien, plus interest thereon at 6 percent per year for three years, plus $100 to apply to any court costs which may be taxed as any proceeding to enforce said lien. Such deposit or bond shall be conditioned to pay any judgment or decree which may be rendered for the satisfaction of the lien for which such claim of lien was recorded, and costs not to exceed $100.

The legislative intent behind this section is clear. A surety is liable for no more than $100.00 in costs to the prevailing party. *541 Construed in para materia, Sections 713.24 and 713.29 provide that a surety's liability for the prevailing party's attorneys fees may not exceed $100, which is the maximum liability of a surety for costs. Therefore, the court was without authority to hold Seaboard Surety Co. jointly and severally liable for attorneys fees, or any other costs, in excess of $100. See, Tuttle/White Constructors, Inc. v. Hughes Supply, Inc., 371 So.2d 559, 565 (Fla. 4th DCA 1979).
This holding is likewise applicable to Chase Manhattan Bank. We find no valid reason to distinguish between the surety and the principal in this area of attorneys fees. Neither are responsible for the dispute between Gesco and Nezelek, and neither significantly contributed to Nezelek's court costs. Transfer bonds, such as the one in question, serve the public's interest in that they free real property from judicial "limbo" and allow for its alienation. Logically the amount of the bond limits the principal's liability where such liability arises solely from the bond.
It should be noted that Section 713.08, Florida Statutes, provides for a lien in the amount remaining unpaid to the lienor for labor or services or materials, but does not provide for inclusion of an amount for the attorneys fees and costs which the lienor may incur in enforcing a lien, even though Section 713.29, Florida Statutes, supra, provides for recovery of attorneys fees by the prevailing party which shall be taxed as costs. We recognize that because of the limitation of the surety's liability for costs to the amount $100 the transfer of the lien to a bond may in some cases work to the detriment of the lienor. This is a legislative matter and one which is controlled by Section 713.24, Florida Statutes, supra, and as we have stated in Tuttle/White Constructors, Inc. v. Hughes Supply, Inc., supra, "We find nothing in the statutes, however, to prevent the entry of an unsecured judgment in an amount appropriate to cover such expenses against a losing party other than a surety." Accordingly, the orders awarding attorneys fees and taxing costs are reversed insofar as they purport to assess against Seaboard Surety Company and Chase Manhattan Bank an amount in excess of $100. Gesco claims that the award of attorney's fees against it was excessive. However, as Gesco did not appeal from the order awarding attorney's fees, and as such fees are not limited by statute, we are without jurisdiction to review the award. Therefore, the orders, as to Gesco, are affirmed.
The final matter on appeal concerns the propriety of the trial court's post judgment order staying execution upon its awards of attorneys fees and costs. A motion for stay under Florida Rule of Civil Procedure 1.550(b) is directed to the sound discretion of the trial court. Regan, Inc. v. Val-Ro Ltd., 396 So.2d 834 (Fla. 3d DCA 1981). Having reviewed the record, we are unable to conclude that the court's order granting the stay of execution was an abuse of its discretion. The order is therefore affirmed.
The case is remanded to the trial court for proceedings consistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART and REMANDED.
DOWNEY and DELL, JJ., and BARKETT, ROSEMARY, Associate Judge, concur.
NOTE: DELL, J., did not participate in oral argument but has reviewed the presentation made at that proceeding.