543 So.2d 878 (1989)
ACQUISITION CORP. OF AMERICA and Kenneth V. Hemmerle, Sr., D/B/a Hemmerle Construction Company, Appellants,
v.
AMERICAN CAST IRON PIPE COMPANY, Coffman Leasing, Inc., and Earl Coffman, Appellees.
Nos. 4-86-2517, 87-0501.
District Court of Appeal of Florida, Fourth District.
May 31, 1989.
*879 Richard P. McCusker, Jr., and Lewis A. Berns, Fort Lauderdale, for appellants.
Dennis G. King of Dennis G. King, P.A., Miami, for appellee American Cast Iron Pipe Co.
Richard A. Rosenberg of Richard A. Rosenberg, P.A., Orange City, for appellees Coffman Leasing, Inc. and Earl Coffman.

ON REHEARING
WARNER, MARTHA C., Associate Judge.
We grant rehearing to correct factual errors in the issued opinion, and we substitute this opinion for the original. We have considered the other matters raised in the motion for rehearing and deny it in all other respects. For the most part, the motions are simply reargument of the issues presented.
The owner of a construction project and the general contractor appeal a final judgment in favor of the subcontractor and its supplier. We affirm in part and reverse in part.
The subcontractor, Coffman Leasing, Inc., entered into a contract with Hemmerle Construction, the general contractor, to construct water, sewer, and drainage facilities on a project in Boca Raton. The contract required the subcontractor to provide labor and materials in accordance with the plans and specifications prepared by the consulting engineers, and only as per the quantities of materials listed on the "summary of quantities" on the plans. Any additions to the quantities would "become an extra ... contract." Condition 15 of the contract provided that should the owner, architect, or general contractor desire additional work to be performed, the general contractor could direct such additional work. In no case would any claim for extra work be recognized unless authorized in writing by the general contractor. Coffman agreed to perform this contract for a lump sum price of $390,000.00.
Disputes arose as work was performed on the contract, and, shortly before job completion, Coffman walked off the job. One of Coffman's suppliers, American Cast Iron Pipe Company, filed a claim of lien against the project. When suit was filed to foreclose the claim of lien, the lien was transferred to a bond by Acquisition Corp., the owner of the property. Coffman, who was also sued by American Cast Iron, filed a cross-claim against Hemmerle Construction for breach of contract, alleging failure to pay for the contracted work plus substantial extras. Hemmerle filed its own cross-claim against Coffman for breach of contract, indemnity, and intentional misrepresentation. Acquisition also defended against American Cast Iron's assertion of a *880 fraudulent lien. The case proceeded to trial, primarily on the issues raised in the cross-claims. After trial, the court ruled in favor of Coffman and its materialman as to all counts.
Hemmerle asserts that the extras claimed by Coffman were not authorized in writing and thus not recoverable according to the contract provisions. The trial court construed the contract as authorizing "extras" without requiring written authorization because the contract contemplated that extras would be possible. We disagree with such a construction. Although the typewritten portion of the contract stated that additions would be an extra contract, the contract also specified that the subcontractor was to perform the contract in strict accordance with its conditions, which included a requirement that extra work be authorized in writing. A contract should be construed so as to give effect to all of the provisions of the contract, if possible. Bituminous Casualty Corp. v. Lewis Crane Service, Inc., 173 So.2d 715 (Fla. 3d DCA 1965). The trial court's construction in this case would not give effect to the requirement that all additions to the contract be in writing.
However, if the trial court's ruling may be sustained on other grounds, this court should do so. See, e.g., In re: Estate of Yohn, 238 So.2d 290 (Fla. 1970). Thus, the claims for additional compensation sought by Coffman must be separated to determine the basis for the additional charges and whether or not written authorization was required.
Coffman's claim may be broken down into four categories. First, Coffman claims additional compensation and extra expenses because the site was not properly prepared, requiring greater excavation than the plans called for. Second, it claims extras caused by a revision of the plans at the commencement of the job. Third, changes required by the Health Department in order to pass inspection were the third cause of claimed extra expenses. Finally, Coffman demands as a necessary extra to complete the job an increase in the tonnage of pipe fittings from what was called for in the summary of quantities.
As to the first category, where a default by the owner or its agent compels the contractor to perform additional work in order to conform to the contract plans, such work is not an alteration or addition to the contract which is required to be in writing as contemplated by the terms of the contract. City of Miami v. Nat Harrison Associates, Inc., 313 So.2d 99 (Fla. 3d DCA 1975), cert. denied, 330 So.2d 15 (Fla. 1976). In the instant case, the trial court found that the general contractor had improperly prepared the construction site. Therefore, the extra work caused by the improper site preparation is recoverable even absent written authorization.
Several increases in materials and labor were required by revisions in the plans and specifications. According to the evidence, these revisions were added to the plans in March of 1985, before construction commenced. The conditions of the contract require that no claim for extra work will be authorized unless in writing. There is no evidence of any such written authorization from the general contractor. Thus, the subcontractor cannot now make claim for the extras required by the revision. See Southern Roadbuilders, Inc. v. Lee County, 495 So.2d 189 (Fla. 2d DCA 1986), rev. denied, 504 So.2d 768 (Fla. 1987). Using the plans and specifications in evidence, simple mathematics indicate that the additional charges due to the revision amount to $8,864.10, which should be disallowed from the subcontractor's recovery.[1]
The contract also called for all water lines to be Class 50 Ductile Iron pipe or Johns Manville C-900 Blue Brute pipe. At trial, Coffman claimed an extra expense of $16,543.00 because he was required by the Health Department to use the more expensive cast iron pipe. Other extra charges were also necessitated by Health Department *881 requirements and inspections. Even without written authorization, the subcontractor is entitled to claim compensation for the pipe and other extras mandated by the Health Department. See Diana Stores Corp. v. M. & M. Electric Co., 108 So.2d 486 (Fla. 3d DCA 1959); William Zeigler & Son v. Chicago Northwestern Development Co., 71 Ill. App.3d 276, 27 Ill.Dec. 383, 389 N.E.2d 195 (1979). See also Annotation, Effect of Stipulation, In Private Building or Construction Contract, that Alterations or Extras Must be Ordered in Writing, 2 A.L.R.3d 620, at 643 (1965).
Coffman's final claim is for additional compensation for increased tonnage of pipe fittings in excess of what appears on the stated quantities on the plans and specifications. After termination of the job and during the lawsuit, Mr. Coffman reviewed the plans and specifications to determine how many fittings he used. According to his calculations, which the trial court accepted, he discovered that the summary of quantities understated the fittings required on the job by over two tons. The subcontractor bid the job and formed the contract based upon the plans and specifications, which were in error. Even though the contract is for a stipulated amount, the subcontractor may still recover for these extra materials necessitated through the act or omission of the owner or his agent in preparing the erroneous summary of quantities. See 13 Am.Jur.2d Building and Construction Contracts § 19 (1964); cf. City of Miami v. Nat Harrison Associates, Inc., 313 So.2d 99 (Fla. 3d DCA 1975).
Another issue raised by appellants involves the exclusion of their expert from testifying due to violation of the pretrial order. This particular expert was made known to the appellees the week before the trial with an offer to make him available for deposition, but the expert did not view the property until the day before the trial.
Exclusion of the testimony of a witness is a drastic remedy which should be utilized only under the most compelling circumstances. In re Estate of Lochhead, 443 So.2d 283 (Fla. 4th DCA 1983). However, it is within the broad discretion of the trial court to examine and deal with problems of witness disclosure involving prejudice in the preparation of trial. Binger v. King Pest Control, 401 So.2d 1310 (Fla. 1981). Under the facts of this case, we cannot say that the trial court abused its discretion in excluding the witness.
At the close of the case, the appellee Coffman moved to add Acquisition Corporation, the property owner, as a defendant to its cross-claim on the basis that it was the alter ego of Hemmerle, the equitable owner of the stock of Acquisition. Appellee American Cast Iron moved for a judgment against Kenneth V. Hemmerle, Sr. on the lien foreclosure against Acquisition Corporation also on the alter ego theory that the corporate veil could be pierced. The trial court granted both motions, which we determine was error.
This issue was raised for the first time at trial as a motion to add a party at the close of the evidence. While Florida Rule of Civil Procedure 1.190(b) permits amendments to pleadings to conform to the evidence at trial, there is no authority to add a new party defendant to a claim to conform to the evidence.
When a codefendant is sued on a cross-claim, service of summons is required. Elliot Enterprises, Inc. v. Serota, 436 So.2d 415 (Fla. 3d DCA 1983); Fundaro v. Canadiana Corporation, 409 So.2d 1099 (Fla. 4th DCA 1982). Clearly, this was not done here. While we note that the recent amendment to Florida Rule of Civil Procedure 1.170(g), effective January 1, 1989, eliminates the requirement of issuance of a summons to serve a cross-claim where the codefendant has already been served in the action, this amendment was not in effect at the time this action was heard in the trial court. Therefore, the trial court could not have permitted the addition of a party in the manner it did. The final judgment against Acquisition Capital on the cross-claim must be reversed.
Considering the merits of this issue both as to the claim of Coffman and American Cast Iron that the corporate veil can be pierced, we also find error. The corporate *882 veil may not be pierced unless it is shown not only that one business entity dominated or was the alter ego of the other, but that the relationship was created or used in order to mislead or defraud creditors. Symons Corp. v. Tartan-Lavers Delray Beach, Inc., 456 So.2d 1254 (Fla. 4th DCA 1984); American States Insurance Company v. Kelley, 446 So.2d 1085 (Fla. 4th DCA), rev. denied, 456 So.2d 1181 (Fla. 1984). To make that determination the court may address the broader question of whether there was evidence of improper conduct on the part of the corporate entity or the individual in the formation or operation of the corporation. See Steinhardt v. Banks, 511 So.2d 336, 339 (Fla. 4th DCA), rev. denied, 518 So.2d 1273 (Fla. 1987); Tiernan v. Sheldon, 191 So.2d 87, 89 (Fla. 4th DCA 1966), cert. discharged, 200 So.2d 183 (Fla. 1967), (listing the criteria for determining whether improper conduct has occurred to justify piercing the corporate veil.)
Generally courts should be reluctant to pierce the corporate veil. Eagle v. Benefield-Chappell, Inc., 476 So.2d 716 (Fla. 4th DCA 1985). In the instant case, there is no allegation that Hemmerle used Acquisition Corporation to hide his personal assets, nor any other similar impropriety, nor was any fraud proven. None of the criteria for improper conduct was proven. Thus, the trial court erred in piercing the corporate veil.
The final judgment was rendered in favor of both Coffman Leasing, Inc. and Earl Coffman, individually, against Hemmerle and Acquisition. However, the subcontract agreement upon which the cross-claim was based was between only Coffman Leasing, Inc. and Hemmerle Construction Co. Coffman individually entered into a guaranty with American Cast Iron as to payment of its invoices, but there is no agreement between any of the appellants and Coffman, individually. Appellee offers no basis upon which the judgment in favor of Coffman, individually, can be upheld against either Appellant, and we cannot discern a viable one from the pleadings or evidence. We therefore reverse the judgments in favor of Coffman, individually.
As to all other issues raised with respect to the final judgment, we affirm the trial court's order.
Subsequent to the entry of the final judgment, attorney's fees and costs hearings were held. The trial court rendered a cost judgment in the amount of $905.49 in favor of American Cast Iron, the lienor, and directed that it "be applied to the cash bond." To the extent that this judgment permits recovery of any more than $100.00 from the cash bond on which Acquisition Capital was the principal, we reverse. See § 713.24, Fla. Stat. (1985). Those costs awarded in excess of $100.00 constitute an unsecured personal judgment against the owner of the real estate. Tuttle/White Constructors, Inc. v. Hughes Supply, Inc., 371 So.2d 559 (Fla. 4th DCA 1979); Gesco, Inc. v. Nezelek, 414 So.2d 535 (Fla. 4th DCA 1982), rev. denied, 426 So.2d 27 (Fla. 1983).
The trial court also entered an order awarding attorney's fees to American Cast Iron, the plaintiff below. No notice of appeal of this order was filed. Thus, this court has no jurisdiction to review the amount of the fee. See Gergora v. Goldstein Professional Association, 500 So.2d 695 (Fla. 3d DCA 1987); Gesco, Inc. v. Nezelek, 414 So.2d 535 (Fla. 4th DCA 1982).
Finally, Hemmerle appeals the award of attorney's fees in favor of Coffman Leasing. The attorney's fees were awarded on the ground that Hemmerle's wrongful act of breaching its contract with Coffman by refusing to pay the balance on the contract prevented Coffman from paying American Cast Iron, thus necessitating both Coffman's defense of American's claim plus Coffman's prosecution of the claim against Hemmerle. This was error.
Coffman's defense that he could not pay American Cast Iron because of nonpayment by Hemmerle is meritless, as payment by Hemmerle was not a condition precedent to payment of American Cast Iron by Coffman. Peacock Construction Co. v. Modern Air Conditioning, Inc., 353 So.2d 840 *883 (Fla. 1977). That being the case, expenses connected with such litigation are not recoverable. ABD Management v. Robert L. Turchin, Inc., 490 So.2d 202 (Fla. 3d DCA 1986); Norin Mortgage Corp. v. Wasco, Inc., 343 So.2d 940 (Fla. 2d DCA 1977).
In addition, by far the vast majority of the fees claimed by Coffman resulted from the prosecution of its claim against Hemmerle. Coffman claims that these fees should be recoverable because of Hemmerle's "wrongful act" of breaching the contract with Coffman. Where the wrongful act of the defendant has involved the claimant in litigation with a third party, the claimant may claim as damages against the defendant such fees as are necessary to protect its interests. However, such fees are recoverable only to the extent that they are incurred in the litigation between the third party and the party seeking fees. Auto-Owners Insurance Co. v. Hooks, 463 So.2d 468, 477 (Fla. 1st DCA 1985).
All parties to this appeal filed motions for attorney's fees on appeal. Based upon this decision, none of the parties to this action can be considered the "prevailing" party for purposes of this appeal. Auto-Owners Insurance Company v. Hooks, 463 So.2d 468, 478 (Fla. 1st DCA 1985). Therefore, all motions for attorney's fees are denied.
The judgment below is affirmed in part, reversed in part, and remanded for proceedings consistent with this opinion.
ANSTEAD and DELL, JJ., concur.
NOTES
[1] Coffman's Exhibit 7, Sheet 2 of 4, and Coffman's Exhibit 4 show amounts changed by the revision as reflected on Exhibit 4. These changes include increases in 15" RCP and "C" Inlets, greater depth as a result of revision, and decreases in 18" RCP and 54" RCP.