458 So.2d 1163 (1984)
Hans Ulrich BOTHMANN, Appellant,
v.
Vera M. HARRINGTON, Formerly Known As Vera M. Bothmann, and Richard Baron and Corrigan, Baron & Zelman, P.A., Appellees.
No. 83-1426.
District Court of Appeal of Florida, Third District.
November 6, 1984.
*1166 Horton, Perse & Ginsberg and Arnold Ginsberg and William A. Daniel, Jr., Miami, for appellant.
Walton, Lantaff, Schroeder & Carson and Sally R. Doerner, Wicker, Smith, Blomqvist, Tutan, O'Hara, McCoy, Graham & Lane and Richard A. Sherman, Miami, for appellees.
Before HUBBART, NESBITT and JORGENSON, JJ.
NESBITT, Judge.
The plaintiff, Bothmann, appeals a portion of a final summary judgment limiting his compensatory damages to $1,000 and disallowing his claim for punitive damages. The defendant, Harrington, and the third-party defendants, Baron and Corrigan, Baron & Zelman, P.A. (collectively hereinafter Baron), cross-appeal that portion of the summary judgment finding liability. We affirm in part and reverse in part on the main appeal, and we reverse as to the cross-appeals.
Bothmann and Harrington lived together as husband and wife until the dissolution of their marriage in March 1978. Approximately one year after this dissolution, Harrington, through her attorney, filed a motion to set aside the property settlement agreement involved in the dissolution action in an attempt to modify the child support provisions therein. As part of that lawsuit, Harrington, through her attorney, Baron, caused a lis pendens to be recorded on November 9, 1979 against a condominium unit owned by Bothmann.
Three days prior to the filing of the lis pendens, Bothmann had entered into a contract for the lease and/or sale of the condominium unit with Wohlgemuth. The contract contained a purchase option which could be exercised at Wohlgemuth's discretion at any time, with the condition that if the option were exercised, the closing date would be on or before August 20, 1980. In January 1980, Wohlgemuth decided to purchase the unit and exercised the option. During a routine title search, Wohlgemuth discovered the lis pendens and refused to close until Bothmann had it removed.
Bothmann's attorney wrote a letter to Harrington and Baron requesting the removal of the lis pendens. This request was refused. Subsequently, a motion to dissolve *1167 the lis pendens was filed in the dissolution proceedings. An order granting Bothmann's motion to dissolve the lis pendens was entered on July 23, 1980. The sale of the condominium unit was closed on July 25, 1980.
In August 1980, Bothmann sued Harrington for compensatory and punitive damages on theories of slander of title and abuse of process. Bothmann pled four items of special damages: (1) the attorney's fee paid for the removal of the lis pendens; (2) a lost profit resulting from his selling of the property for the same purchase price in July 1980 that he would have received in November 1979[1] due to the delay caused by the filing of the lis pendens, despite an increase in property values; (3) the higher price he would have to pay for a new residence due to an upswing in the real estate market; and (4) a loss due to his inability to make a margin call on bonds in February 1980 from the sale proceeds he expected at that time, forcing liquidation of the bonds on a depressed market. Harrington instituted a third-party action against Baron, the counsel who represented her at the time the lis pendens was filed. Harrington sought indemnity against Baron for legal malpractice, seeking as damages any recovery Bothmann secured in the main action.
In December 1981, a partial summary judgment on damages was rendered in the main action, which in effect limited any recoverable damages to the $1,000 attorney's fee incurred for the removal of the lis pendens, and found "the other damages claimed are speculative and remote and do not necessarily flow from the filing of the lis pendens." In April 1983, the court entered a summary final judgment in the main action, finding liability on the part of Harrington and incorporating the December 1981 judgment limiting damages to the $1,000 attorney's fee. All parties have appealed.

POTENTIAL INDEMNITOR'S RIGHT TO APPEAL JUDGMENT ADVERSE TO INDEMNITEE
A preliminary issue confronting us is whether the order under review is susceptible to the third-party defendant's (Baron's) cross-appeal. The order makes no reference to and makes no determination concerning the third-party claim. In fact, the third-party action between Harrington and Baron is still pending before the trial court. Nevertheless, under the law of indemnity, we find that Baron's cross-appeal is proper.
The settled law is that a potential indemnitor, like Baron, is bound by a judgment rendered against an indemnitee when the indemnitor is on notice and is not precluded from defending in the action. Hull & Co. v. McGetrick, 414 So.2d 243 (Fla. 3d DCA 1982) and cases cited therein. In the present case, the alignment of the parties is similar to that which existed in Seaboard Coast Line Railroad v. Lantz, 405 So.2d 495 (Fla. 3d DCA 1981). In that case, the third-party indemnity action was being appealed while a trial on damages in the main action was proceeding below. This court held that the third-party defendants, if not precluded from defending, would be bound by the outcome of the trial if the judgment in their favor on the third-party indemnity claim was later overturned. Lantz, 405 So.2d at 497 n. 3. The clear inference from the cases is that a potential indemnitor should be given every opportunity to defend the main action.[2] In the present case, this includes allowing Baron to cross-appeal the adverse judgment on liability rendered *1168 against Harrington, the potential indemnitee.

LIABILITY
We turn now to the substantive issues presented. We will first deal with the issue of liability raised in the cross-appeals. Simply stated, the question is whether there exists any genuine issues of material fact concerning Harrington's liability to Bothmann. We find there does and reverse the summary judgment entered against Harrington on liability.

Disparagement of Property
Bothmann's primary cause of action is for slander of title, or more appropriately called disparagement of title or property. See Procacci v. Zacco, 402 So.2d 425 (Fla. 4th DCA 1981); W. Prosser, Handbook of the Law of Torts § 128 (4th ed. 1971). In a disparagement action the plaintiff must allege and prove the following elements: (1) A falsehood (2) has been published, or communicated to a third person (3) when the defendant-publisher knows or reasonably should know that it will likely result in inducing others not to deal with the plaintiff and (4) in fact, the falsehood does play a material and substantial part in inducing others not to deal with the plaintiff; and (5) special damages are proximately caused as a result of the published falsehood.[3]See Allington Towers Condominium North, Inc. v. Allington Towers North, Inc., 415 So.2d 118 (Fla. 4th DCA 1982); Continental Development Corp. of Florida v. Duval Title & Abstract Co., 356 So.2d 925 (Fla. 2d DCA 1978); Gates v. Utsey, 177 So.2d 486 (Fla. 1st DCA 1965); Restatement (Second) of Torts §§ 623A-634, 651 (1977); W. Prosser, Handbook of the Law of Torts § 128 (4th ed. 1971). On this appeal, we are concerned only with the first and last elements.[4]
The basis of a disparagement of property action arises out of an injurious falsehood or false statement concerning one's property. In the present case, Bothmann contends that the filed notice of lis pendens constituted the necessary falsehood because it falsely indicated that his condominium unit was involved in a lawsuit. Generally, a wrongful and intentional filing of a notice of lis pendens will support an action for disparagement of property. See Atkinson v. Fundaro, 400 So.2d 1324 (Fla. 4th DCA 1981). We find, however, that a distinction must be drawn between an improper filing in a procedural sense, and a wrongful filing in a substantive sense. Only the latter will support an action for disparagement of property because only it meets the requisite falsehood element of the action.[5] In the present case it is far from clear, at this stage of the proceedings, that the filing of the lis pendens was wrongful in a substantive sense. The lis pendens was filed and subsequently dissolved in an action separate and distinct *1169 from the present action. The order dissolving the lis pendens, attached as an exhibit to Bothmann's complaint, fails to indicate the basis for the dissolution.[6] On the record before us, therefore, we must reject Bothmann's contention that the order dissolving the lis pendens has a res judicata effect on the issue of whether the lis pendens was wrongfully filed.
A review of the record and the pleadings reveals that a genuine issue of material fact exists as to the falsehood element of the disparagement action. In this type of action, there is no presumption that a disparaging statement is false, as is the case in a personal slander action, and the plaintiff has the burden of establishing falsity. See Restatement (Second) of Torts §§ 634, 651 (1977); W. Prosser, Handbook of the Law of Torts § 128 (4th ed. 1971). It was, therefore, error for the trial court to grant a summary judgment on liability for Bothmann on the disparagement of property cause of action.

Abuse of Process
We now turn to the liability issue in relation to the cause of action for abuse of process. Although this theory has not been argued before this court nor briefed on this appeal, it was before the trial court in the pleadings when the summary judgment was entered. Since the summary final judgment does not indicate on which theory it was granted, we must also examine the judgment in this context.
Abuse of process involves the use of criminal or civil legal process against another primarily to accomplish a purpose for which it was not designed. See Cline v. Flagler Sales Corp., 207 So.2d 709 (Fla. 3d DCA 1968). For the cause of action to exist there must be a use of the process for an immediate purpose other than that for which it was designed.[7] There is no abuse of process, however, when the process is used to accomplish the result for which it was created, regardless of an incidental or concurrent motive of spite or ulterior purpose. In other words, the usual case of abuse of process involves some form of extortion.[8]Restatement (Second) of Torts § 682 comment b (1977); W. Prosser, Handbook of the Law of Torts § 121 (4th ed. 1971).
*1170 In the present case, the pleadings indicate that Harrington denies each and every allegation in the abuse of process count of Bothmann's complaint. A review of the record reflects that genuine issues of material fact exist as to Harrington's liability for abuse of process. Therefore, the summary final judgment on liability cannot be affirmed on this theory either.

DAMAGES RECOVERABLE
Finally, we turn to the main appeal which challenges that portion of the summary judgment which limited recoverable damages to the $1,000 attorney's fee. We start out with the fact that there is no dispute over the recoverability or amount of attorney's fees if liability is ultimately established. See Glusman v. Lieberman, 285 So.2d 29 (Fla. 4th DCA 1973); Stoler v. Levinson, 394 So.2d 462 (Fla. 3d DCA 1981). The dispute, instead, revolves around the three other claimed items of compensatory damages and the punitive damages claim.
The three contested items of compensatory damages can be characterized as special damages. In a disparagement action, the plaintiff must always plead and prove special damages as an essential element in the cause of action. Although not an essential element in an action for abuse of process, special damages can be pled and proved under this theory as well.[9] Regardless of which theory a plaintiff is proceeding under, "special damages" generally means pecuniary loss.
In a disparagement action, the pecuniary loss recoverable for the injurious falsehood is restricted to that which results directly and immediately from the falsehood's effect on the conduct of third persons and the expenses incurred to counteract the publication. See Restatement (Second) of Torts § 633 (1977). Under either the disparagement theory or the abuse of process theory, the alleged wrongful act of the defendant must be the legal cause of the claimed pecuniary losses. This means that the special damages pled must have been foreseeable and normal consequences of the alleged wrongful conduct, and the conduct must be a substantial factor in bringing about the losses.
In the present case, the first disputed item of special damages involves a lost profit resulting from the delay in closing the sale of Bothmann's condominium unit. Bothmann, however, had entered a contract with Wohlgemuth which allowed the purchase of the unit for a specified price up until August 20, 1980. The sale actually closed on July 25, 1980, under the agreed terms of the contract. Therefore, there was no loss or damage attributable to Harrington's filing of the lis pendens and the trial court properly disallowed this claimed item of damage.
The final two items of special damages claimed by Bothmann were also properly disallowed. One item involves the greater amount he would have to pay for a new residence and the other involves a loss on bond investments due to his inability to make a margin call. Bothmann is apparently alleging that if he had received the $43,000 sale proceeds a few months earlier, not only would he have used them to meet the margin call he owed on bonds in the amount of $405,000, but he also would have bought a new residence with the proceeds. How he intended to stretch the proceeds so far is not indicated in the record. In any event, these are precisely those types of damages considered to be too speculative or remote to allow recovery. These losses simply are not the direct and immediate result of Harrington's filing of the lis pendens. Recoverable damages for a wrongful *1171 filing of a lis pendens do not include any loss resulting from the plaintiff's failure to make an advantageous use of money that he would have (or might have) made if a prospective sale had been consummated, or in this case, consummated at an earlier date.[10]See Earp v. Nobmann, 122 Cal. App.3d 270, 175 Cal. Rptr. 767 (Ct.App. 1981); Restatement (Second) of Torts § 533 comment i, esp. illustration 4 (1977).
The final point under review involves the issue of punitive damages. It is clear that punitive damages are recoverable in both disparagement actions and abuse of process actions. See Glusman; Stoler. Before they can be recovered, however, the plaintiff must establish actual malice[11] on the part of the defendant. See Continental Development; W. Prosser, Handbook of the Law of Torts § 121 (4th ed. 1971). We find that Bothmann has adequately pled entitlement to punitive damages and, therefore, should be given the opportunity to prove actual malice on the part of Harrington.
In conclusion, we affirm the trial court's disallowance of Bothmann's claimed items of special damages other than the attorney's fee; we reverse the remainder of the summary final judgment upon a finding that genuine issues of material facts exist as to Harrington's liability and as to the propriety of punitive damages if liability is established. Affirmed in part, reversed in part, and remanded for further proceedings.
NOTES
[1] Although Bothmann alleges in the complaint that he would have received the purchase money in November 1979, it is undisputed that Wohlgemuth did not decide to buy the property until January 1980. November 1979 was merely when the purchase option agreement was entered.
[2] We express no opinion on a party's ability to preclude a potential indemnitor from defending for any particular reason. Such a situation is not before us at this time. We are merely expressing the policy that courts, on their own, should not preclude a potential indemnitor from defending in an action against the indemnitee.
[3] The malicious intention, or "legal malice," sometimes said to be an element of a disparagement of property action, is presumed to exist if the other elements are established. If a privilege is shown by a defendant, however, the plaintiff must establish the defendant acted with "actual malice" to overcome the privilege. Allington Towers Condominium North, Inc. v. Allington Towers North, Inc., 415 So.2d 118 (Fla. 4th DCA 1982); Gates v. Utsey, 177 So.2d 486 (Fla. 1st DCA 1965). See infra note 11.
[4] The last element, that the falsehood proximately caused special damages, is discussed in our analysis of the damages issues raised in the main appeal. The second, third and fourth elements are not in dispute in this case.
[5] An example of an improperly filed notice of lis pendens in a procedural sense would be the filing of a defective notice under the statute. Section 48.23(1)(a), Florida Statutes (1983), requires a number of items to appear on the face of the notice. If one or more of these items is absent, the notice is improper. This does not mean, however, that the lis pendens was wrongfully filed in a substantive sense. The property may in fact be rightfully subject to a properly filed notice of lis pendens. In such a case, a disparagement action would not lie because there is no injurious falsehood. Cf. Procacci (if property is involved in litigation and a lis pendens is filed against that property pursuant to the litigation, the filing party is protected by the absolute privilege granted participants in judicial proceedings). It is also generally held that a good faith privilege can be asserted as an affirmative defense in a disparagement action. See Allington Towers; W. Prosser, Handbook of the Law of Torts § 128 (4th ed. 1971).
[6] The trial court is given a limited amount of discretion to control a notice of lis pendens. If the action is not founded on a recorded instrument or a mechanic's lien, section 48.23(3) gives the courts the same authority to control and discharge a notice of lis pendens as they have to grant and dissolve injunctions. In the present case, the notice was defective on its face in that it failed to indicate the time the action was instituted and it did not contain a statement of the relief sought as to the property. § 48.23(1)(a), Fla. Stat. (1979). The trial court, in its discretion, could have dissolved the notice of lis pendens based upon these defects. These defects, however, would not support a disparagement cause of action. See supra note 5.
[7] "Legal malice" is presumed to exist if the plaintiff establishes that the process has been used for an improper purpose.

It is often said that proof of "malice" is required; but it seems well settled that, except on the issue of punitive damages, this does not mean spite or ill will, or anything other than the improper purpose itself for which the process is used... . [footnotes omitted]
W. Prosser, Handbook of the Law of Torts § 121 (4th ed. 1971). Cf. supra note 3. See infra note 11.
[8] Even a pure spite motive is not sufficient where process is used only to accomplish its intended purpose.

Some definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of the process, is required; and there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions. The improper purpose usually takes the form of coercion to obtain a collateral advantage, not properly involved in the proceeding itself, such as the surrender of property or the payment of money, by the use of the process as a threat or club. There is, in other words, a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process, itself, which constitutes the tort. [footnotes omitted]
W. Prosser, Handbook of the Law of Torts § 121 (4th ed. 1971). See McMurray v. U-Haul Co., 425 So.2d 1208 (Fla. 4th DCA 1983). See also Blue v. Weinstein, 381 So.2d 308 (Fla. 3d DCA 1980).
[9] Once the tort of abuse of process is established, the damages recoverable are generally the same as those recoverable in a malicious prosecution action. Since special damages are recoverable in a malicious prosecution action if they are specifically pled and proved, they are likewise recoverable in an abuse of process action. See W. Prosser, Handbook of the Law of Torts §§ 119, 121 (4th ed. 1971).
[10] The reason these types of losses are not recoverable in a disparagement action is because they are

not the direct and immediate consequence[s] of the injurious falsehood but [depend] upon the situation of the disappointed vendor and the particular purposes for which it would have been necessary or advantageous for him to apply the purchase money.
Restatement (Second) of Torts § 633 comment i (1977).
[11] The malice necessary to support a punitive damages claim is not equivalent to the "legal malice" that is sometimes said to be necessary to prove a claim of disparagement or abuse of process. In Florida, "legal malice" is presumed in these actions once the other elements are established. See supra notes 3 and 7. "Legal malice" generally means that the act was deliberate conduct without reasonable cause. On the other hand, "actual malice" necessary for punitive damages (or to overcome a privilege, see supra note 3) means ill will, bad or evil motive, or such gross indifference to or reckless disregard of the rights of others as will amount to a willful or wanton act. See Collier County Publishing Co. v. Chapman, 318 So.2d 492, 495 (Fla. 2d DCA 1975), cert. denied, 333 So.2d 462 (Fla. 1976).