501 So.2d 87 (1987)
Marcel E. MARTY, Appellant,
v.
Norine Deep GRESH, Appellee.
No. BL-467.
District Court of Appeal of Florida, First District.
January 15, 1987.
*88 Craig F. Hall, of Hall & Hall, Gainesville, for appellant.
Stephen B. Rakusin, Gainesville, for appellee.
SHIVERS, Judge.
Marcel E. Marty (appellant) appeals from the circuit court's amended order granting Norine Deep Gresh (appellee), formerly Norine Deep Rivenbark, the option to accept remittitur, or, in the alternative, to elect a new trial on issues of compensatory and punitive damages. The issue in the instant case is whether the trial court properly denied appellant's motion for a directed verdict on appellee's abuse of process claim. We conclude that the trial court erred in not granting appellant's motion for directed verdict and reverse.
Appellant and appellee dated for an indeterminate period of time prior to, and during, 1979. On January 22, 1979, appellant and appellee entered into an agreement to purchase a condominium. On March 7, 1979, appellant and appellee signed a written contract defining their respective rights and obligations regarding the condominium. Both parties agreed to take title to the unit as co-owners. Appellant promised to contribute $60 a month toward the mortgage payment with the remainder of the payment and all other expenditures to be paid by appellee. Appellee took occupancy of the condominium. Later, the romance between appellant and appellee soured, and the couple stopped dating. After the breakup, appellee met Gregory Gresh, whom she later married.
During their engagement, Mr. Gresh began to visit appellee at the condominium which she continued to co-own with appellant. The presence of Mr. Gresh in the condominium annoyed appellant, and in early 1980 he began to write letters to appellee in which he demanded that she pay rent in consideration for Mr. Gresh's continued presence in the unit. Appellant wrote another letter on April 8, 1980, again requesting rent. By letter dated May 8, 1980, appellant wrote appellee's attorney stating that if she persisted in her refusal to pay rent, he would institute eviction proceedings. In the same letter, appellant offered to buy out appellee's interest in the unit, stating that if his offer was unacceptable to her he would "post for eviction and my rental collections, thereby exposing Norine to losing Charles in the other lawsuit." The reference to "Charles" in the letter concerned appellee's 10-year-old son who had been taken by his paternal grandparents during a visit to North Carolina. Appellee was involved in a lawsuit to regain custody of Charles at the time the May 8th letter was written.
On December 24, 1980, appellant posted a delinquent tenant notice on the front door of the condominium unit which he and appellee (now Mrs. Gresh) co-owned. On January 5, 1981, appellant stated under oath in a complaint to remove tenant that appellee was indebted to him for the amount of $1,300; appellant also requested that appellee be evicted from the condominium. Appellant then caused the complaint to be served on appellee. Prior to his filing of the complaint, appellant had been a licensed real estate broker as well as a certified property manager and landlord. He had instituted numerous tenant eviction actions in regard to properties which he owned or managed for others. On February 1, 1984, appellant's complaint to remove tenant was dismissed for failure to prosecute, and the tenant eviction action was terminated.
*89 The combination of appellants's experience as a broker, property manager, and landlord led appellee to believe that appellant had filed the complaint to remove tenant maliciously and without any cause or reasonable prospect of success. Appellee filed suit in the circuit court of Alachua County, claiming damages on two counts, one for malicious prosecution, the other for abuse of process. The case was tried before a jury, and resulted in a verdict finding appellant not guilty with respect to the claim of malicious prosecution; however, the jury did find appellant guilty of abuse of process and awarded appellee compensatory damages of $6,000. The jury did not award appellee any punitive damages. Appellant filed a motion for remittitur, or, in the alternative, for a new trial on the issue of compensatory damages for abuse of process, and simultaneously renewed a motion which he had originally made at trial for a directed verdict on the abuse of process claim. The circuit court entered an order granting remittitur, or, in the alternative, a new trial on the issue of compensatory damages for abuse of process. The court also entered an order denying appellant's motion for directed verdict on the abuse of process claim. The circuit court later entered an order amending its previous order, and gave appellee the option to elect a new trial on the issues of compensatory and punitive damages.
We conclude that the trial court should have granted appellant's motion for a directed verdict on the abuse of process claim because the facts before the court presented no question for the jury, and could not have established the requisite elements necessary to support such a claim. The practical effect of this conclusion, as will be seen, renders moot the questions appellee has raised with respect to the trial judge's jury instructions on the factors to be considered in an award of punitive damages. For similar reasons, it is unnecessary for us to reach the issue of whether the trial court correctly permitted appellee to elect between accepting remittitur and having a new trial on the issues of compensatory and punitive damages.
It is fundamental that in reviewing the correctness of a trial court's decision regarding a directed verdict, an "appellate court must consider the evidence in a light most favorable to the party moved against." Trend Realty of Gainesville, Inc. v. Bullard, 461 So.2d 298, 299 (Fla. 1st DCA 1985). In the instant case, the nonmoving party is appellee, Mrs. Gresh. A careful reading of the facts of the case at bar as well as of the substantive law surrounding the torts of malicious prosecution and abuse of process discloses that appellee's abuse of process action was in reality a "thinly disguised malicious prosecution claim." Blue v. Weinstein, 381 So.2d 308, 311 (Fla. 3d DCA 1980). "The tort of malicious prosecution is concerned with maliciously causing process to issue, whereas the tort of abuse of process is concerned with the improper use of process after it issues." Yoder v. Adriatico, 459 So.2d 449, 450 (Fla. 5th DCA 1984) (emphasis added). See also Nash v. Walker, 78 So.2d 685 (Fla. 1955); Cazares v. Church of Scientology of California, Inc., 444 So.2d 442 (Fla. 5th DCA 1983); Peckins v. Kaye, 443 So.2d 1025 (Fla. 2d DCA 1983); McMurrary v. U-Haul Co., 425 So.2d 1208 (Fla. 4th DCA 1983); Blue v. Weinstein, 381 So.2d 308, 310 (Fla. 3d DCA 1980). Consequently, appellant's entitlement to a directed verdict turns on whether there was sufficient proof that he misused process after it was served so as to exert some form of leverage over appellee.
The record reveals no evidence to demonstrate any post-issuance abuse of process on the part of appellant. Appellee points to the following as indicia that appellant "commenced and prosecuted the tenant eviction action maliciously, willfully, wantonly, intentionally and in reckless disregard" of her joint ownership rights:
(a) Appellant threatened to evict Appellee in his letters.
(b) As an experienced, certified Property Manager, Appellant knew at the time he commenced the tenant eviction action against the Appellee that he could not *90 lawfully evict the Appellee since she was a co-owner of the property.
(c) Appellant was an experienced, certified Property Manager and had commenced numerous prior tenant eviction actions against persons who rented apartments and other properties from Appellant.
(d) Appellant threatened to evict the Appellee with knowledge that this action could seriously jeopardize the Appellee's position in her child custody action.
First, from a substantive perspective, while the above facts may suggest a malicious intent on the part of appellant, "[t]he maliciousness or lack of foundation of the asserted cause of action itself is actually irrelevant to the tort of abuse of process." Cazares v. Church of Scientology of California, Inc., 444 So.2d 442, 444 (Fla. 5th DCA 1983) (holding that cause of action for abuse of process would not lie where Church alleged no act other than the wrongful filing of a lawsuit) (citing Nash v. Walker, 78 So.2d 685 (Fla. 1955)). Second, and more importantly, the above facts speak to pre-process rather than post-process events, and hence fail to advance appellee's cause of action for abuse of process.
Third, as to the "threats" of eviction and endangerment of appellee's child support action, which appellee maintains were the primary motivation behind appellant's eviction suit, there is no evidence in the record to suggest that any of these events actually transpired. In other words, neither appellee nor her husband was ever evicted from the condominium, and appellee's explanation of how appellant's eviction suit actually harmed her pending child custody action is conspicuously absent from her brief. Indeed, appellee testified that she was never required to go to court to contest appellant's lawsuit, and was never compelled to remove herself from her condominium unit. Appellant dropped the lawsuit when he became aware that he had selected the wrong cause of action and the wrong forum. In sum, appellant's lawsuit caused appellee to do nothing against her will after process was served, and the trial court should have granted his motion for directed verdict.
Having concluded that the trial court should have granted appellant's motion for a directed verdict, we need not discuss whether the trial court's amended order granting appellee the option of a new trial on the issues of punitive and compensatory damages or accepting remittitur was correct. Such discussion is unnecessary because the jury found against appellee on the malicious prosecution claim, and for reasons we have already indicated, there was insufficient evidence to support an abuse of process claim. For the same reasons, appellee's contentions concerning the trial court's failure to instruct the jury properly on the factors to be considered in an award of punitive damages are moot.
REVERSED.
MILLS and JOANOS, JJ., concur.