On Motion for Rehearing and Clarification
 

 POLEN, J.
 

 We grant the appellee’s motion for clarification in part, deny the appellee’s motion for rehearing, withdraw our April 7, 2010 opinion, and substitute the following:
 

 In this commercial landlord-tenant dispute, S & I Investments and its two general partners, llene Richmond and Stephanie Richmond (collectively, “S & I”), appealed a final judgment for money damages in favor of Payless Flea Market, Inc., which found: (a) that the 2003 commercial lease is a valid, binding lease between the parties; and (b) that Payless was entitled to recover $106,018.00 against appellants, jointly and severally, for breach of the lease, together with $14,951.53 in prejudgment interest, plus post-judgment interest, llene Richmond, the only remaining appellant,
 
 [1]
 
 raises three issues: (1) whether the 2003 lease is unenforceable because it lacks two subscribing witnesses, as required by section 689.01, Florida Statutes; (2) alternatively, if the lease is deemed valid, whether judgment should have been granted for the lessor on the breach of contract claim where, under the 2003 lease, the lessor had “sole and unfettered discretion” to withhold consent to subleases; and (3) alternatively, whether the evidence did not support the damages awarded. Because we reverse on the first issue, and find that the 2003 lease was void from its inception, we need not address the remain
 
 *912
 
 ing issues. We will comment only briefly on the issues raised in the cross-appeal, which we affirm.
 

 In August of 1995, S & I and Payless entered into a ten-year commercial lease for a building on Las Olas Boulevard. Milton Richmond signed the agreement on behalf of the lessor, S & I. When Richmond passed away in 1996, his daughters, llene and Stephanie, became joint partners of S & I. There was no written partnership agreement, but llene assumed the day-to-day management of S & I.
 

 In 1999, Isaac Asulin, who operated a clothing store as a subtenant in the building, purchased Payless from the prior owners.
 
 [2]
 

 In February of 2003, Asulin contacted llene Richmond about renewing the lease, which was due to expire in August 2004. Over the next several months, they exchanged draft leases. Ilene’s attorney, David Stolar, sent a letter to Stephanie’s attorney, Lori Sochin, advising that llene had commenced negotiations with Payless. Ms. Sochin responded that Stephanie did not authorize llene to enter into any long-term agreement with a tenant for the Las Olas property without Stephanie’s express consent.
 

 On October 8, 2003, llene and her attorney, Mr. Stolar, dropped a proposed lease with Asulin for his review, at which time they discussed final changes. llene and Stolar returned on October 16, 2003, to execute the lease. Only one change was made in the percentage of sales tax; both parties initialed the change. llene and Asulin signed the lease, which was witnessed by one of Asulin’s employees. There was only one witness, although the signature page of the lease provided for two subscribing witnesses. llene gave Asulin an executed original and kept the other. llene claimed that Asulin knew Stephanie’s approval was required, but that he asked to retain a copy of the signed lease to reread, saying, “don’t you trust me?” Against her counsel’s advice, and with Asulin’s alleged promise to return the lease if Stephanie or her counsel did not approve it, llene left him a copy. Asulin denied any understanding or conversation that the signing was not final, and was conditioned on Stephanie’s approval. The jury obviously accepted Mr. Asulin’s testimony.
 

 On October 24, 2003, llene called Asulin, demanding that he return his copy of the lease. When Asulin refused, llene admittedly “went ballistic,” believing “[i]t was a tremendous betrayal of trust.” She left him an angry voicemail and “screaming and threatening and yelling” messages to his counsel, demanding that the lease be returned. llene did not want Stephanie to find out that the lease had been signed without Stephanie’s approval. In addition, Asulin’s counsel, Mr. Nurieli, was notified prior to the effective date of the lease, November 1, 2003, that it lacked two subscribing witnesses. When Asulin refused to return his copy or take her calls, llene advised him, via e-mail, that she was withdrawing her consent to the lease.
 

 Asulin remained on the premises, collecting rent from the subtenants and paying rent into the court registry pending a resolution of the dispute. llene told Asu-lin he was not to enter into subleases while the litigation was proceeding. llene told several subtenants about the dispute and that she was evicting Payless. Payless’s theory of damages was that those contacts, as well as S & I’s refusal to recognize the 2003 lease, constituted a breach of the lease that caused damages to Payless, because it was unable to enter into any long-term leases with the subtenants. No long-
 
 *913
 
 term subleases were ever presented to S & I for its approval, and no subtenant testified at trial.
 

 S
 
 &
 
 I filed a complaint for tenant eviction and two counts of rescission. The latter two counts were voluntarily dismissed. Payless filed a second amended counterclaim for declaratory relief, tor-tious interference with contract rights, abuse of process and breach of contract. Payless later filed a separate complaint against S & I, alleging tortious interference with contract rights, abuse of process and breach of contract. Cross motions for summary judgment were filed, and the trial court granted summary judgment in S & I’s favor on the abuse of process claim.
 

 The case proceeded to trial, and the jury found that the 2003 lease was a valid, binding lease between S & I and Payless, and that S
 
 &
 
 I had breached the lease by not allowing Payless to enter into any written subleases with its subtenants. The jury awarded Payless $106,018.00 in damages. The jury found in favor of S & I and llene Richmond on the tortious interference claim.
 

 The trial court denied S
 
 &
 
 I’s post-trial motions, including motions for judgment in accordance with the motion for directed verdict, motion for new trial and motion for remittitur. The trial court entered final judgment on the jury verdict. This appeal and cross-appeal follow.
 

 In its post-trial motion for judgment in accordance with prior motions for directed verdict, S & I argued that the 2003 lease is a
 
 new
 
 lease which must comply with the statute of frauds. The 2003 lease was for a term in excess of ten years, but was signed by only one subscribing witness.
 
 See
 
 § 689.01, Fla. Stat. (requiring that a transfer of a leasehold interest for a period longer than one year must be in writing and signed by the party transferring the interest in the presence of two subscribing witnesses). The motion was denied. Payless persuaded the court that because the lease was a “renewal,” rather than a “new” lease, there was no need for two subscribing witnesses.
 

 In considering a motion for a directed verdict, the trial court is required to view the evidence in the light most favorable to the nonmoving party and draw all reasonable conclusions and inferences favorable to the nonmoving party. A directed verdict should not be granted unless no view of the evidence could support a verdict for the nonmov-ing party.
 

 Thor Bear, Inc. v. Crocker Mizner Park, Inc.,
 
 648 So.2d 168, 171 (Fla. 4th DCA 1994) (citations omitted). The same standard applies to appellate review of the trial court’s ruling on the motion.
 
 See id.
 
 at 171-72.
 

 llene Richmond argues that the only reasonable conclusion to be drawn from the facts is that the 2003 lease was not a renewal of the 1995 lease, but a new lease with different terms and involving different parties. Therefore, the court’s legal conclusion that the 2003 agreement was a renewal lease was erroneous. And, because the 2003 lease was a new lease, it must comport with section 689.01 to be enforceable. Since it did not, llene contends that the final judgment must be reversed and entered in her favor.
 

 Payless responds that the 2003 lease was enforceable, because it was a renewal lease, and thus, two witnesses were not required. Alternatively, Payless contends that Ilene’s argument is precluded by the invited error doctrine. Finally, relying on the tipsy coachman rule,
 
 [3]
 
 Pay-
 
 *914
 
 less contends that this court should uphold the trial court’s order based on the theory of estoppel. Specifically, Payless contends that llene is estopped to complain about the lack of two witness signatures because the renewal lease was executed under the supervision of her own counsel and with the same formality as the original 1995 lease; there were witnesses to the signing that could have subscribed as the second witness, and because S & I accepted almost one million dollars in rents under the original lease, which had only one witness.
 

 At the outset, we reject Payless’s argument that appellant(s) invited the error when stipulating that the trial court could determine the issue of whether the 2003 lease was a renewal as a matter of law. Counsel stipulated only that the trial court could make the “new versus renewal” determination as a matter of law; the adverse ruling, itself, was not invited.
 
 See Zanoletti v. Norle Props., Corp.,
 
 688 So.2d 952, 954 (Fla. 3d DCA 1997) (“Invited error occurs when the appellant somehow induced the
 
 specific ruling
 
 by her affirmative action or inactivity.”) (emphasis added).
 

 On the merits, we find that, regardless of whether the lease was deemed new or a renewal, two signatures were required under the applicable statute of frauds, § 689.01. We further find that, given the particular facts herein, the doctrine of es-toppel does not apply.
 

 Section 689.01, Florida Statutes, requires that a lease for a term of more than one year be in writing and signed in the presence of two subscribing witnesses:
 

 No estate or interest of freehold, or for a term of more than 1 year, or any uncertain interest of, in or out of any messuages, lands, tenements or heredit-aments shall be created, made, granted, transferred or released in any other manner than by instrument in writing,
 
 signed in the presence of two subscribing witnesses
 
 by the party creating, making, granting, conveying, transferring or releasing such estate, interest, or term of more than 1 year,....
 

 § 689.01, Fla. Stat. (2003) (emphasis added). Thus, a lease that has only one subscribing witness is unenforceable.
 
 See Fla. Women’s Med. Clinic, Inc. v. Sultan,
 
 656 So.2d 931 (Fla. 4th DCA 1995) (affirming trial court’s dismissal of a complaint that sought to enforce a lease because the lease had only one subscribing witness);
 
 Tino v. Outdoor Media, Inc.,
 
 242 So.2d 196 (Fla. 3d DCA 1970) (affirming trial court’s dismissal of complaint for breach of lease where lease was invalid and unenforceable, in part, because it was “not witnessed as required by § 689.01, Fla. Stat.”). It is undisputed that the 2003 lease had only one subscribing witness, and thus, failed to comply with section 689.01.
 

 Payless argues, however, that the 2003 lease was a valid extension by renewal of the 1995 lease, with substantially the same terms
 
 [4]
 
 and executed in the same manner as the earlier lease. Therefore, two subscribing witnesses were not required.
 

 
 *915
 
 Both parties rely on
 
 Taylor v. Rosman,
 
 312 So.2d 239, 241 (Fla. 3d DCA 1975), as the key case on the issue. In
 
 Taylor,
 
 the tenant moved to dismiss a complaint seeking rent payments under the second lease between the parties.
 
 Id.
 
 at 240. The tenant argued the lease was unenforceable under section 689.01, because there was only one subscribing witness.
 
 Id.
 
 The lower court granted the motion.
 
 Id.
 
 In reversing, the appellate court found that “[t]he two rental agreements are
 
 substantially the same form, contracts,
 
 and both agreements were even
 
 executed in a similar manner
 
 (including one witness to the signature of the landlord and tenant).”
 
 Id.
 
 (emphasis added). The court therefore concluded that “the second agreement was not a ‘new lease’ as contended by the appellee, but merely constituted
 
 an extension by renewal
 
 of the first lease.”
 
 Id.
 
 (emphasis added). The court further held that the tenant was estopped to defeat the second lease agreement by asserting section 689.01 because she and her husband occupied the apartment for almost two years under the similar first rental agreement, making rental payments thereunder.
 
 Id.
 
 at 241.
 

 To the extent
 
 Taylor
 
 suggests that a renewal lease would not have to meet the two-witness requirement under section 689.01, we disagree with the opinion in
 
 Taylor.
 
 The language of the statute makes no such distinction. To the contrary, it states in relevant part that
 
 “[n]o
 
 estate or interest of freehold, or for a term of more than 1 year, ... shall be created, made, granted, transferred or released in any other manner than by instrument in writing, signed in the presence of two subscribing witnesses .... ” § 689.01 (emphasis added.)
 

 As for Taylor’s finding that the tenant was estopped to defeat the second lease agreement by asserting section 689.01 because she and her husband occupied the property for almost two years under the similar first rental agreement, making rental payments thereunder, 312 So.2d at 241, the Third District more recently noted in
 
 Skylake Insurance Agency, Inc. v. NMB Plaza, LLC,
 
 23 So.3d 175 (Fla. 3d DCA 2009), that:
 

 In the decided estoppel cases involving leases, the tenant took possession and the landlord accepted the rent. The Florida Supreme Court said in one such case that the lessors were
 

 estopped from contending that the lease here involved is invalid for the reason that it was executed in the presence of only one subscribing witness .... [The lessors] have accepted benefits under the lease, have placed the lessee in possession, have negotiated to convey the lands subject to the lease, and in an all respects have recognized it as being an effective conveyance, and in equity they ought not to be permitted to disavow it now.
 

 Id.
 
 at 178 (citing
 
 Gill v. Livingston,
 
 158 Fla. 577, 29 So.2d 631, 632 (1947);
 
 Taylor,
 
 312 So.2d at 241;
 
 Arvanetes v. Gilbert,
 
 143 So.2d 825, 826 (Fla. 3d DCA 1962);
 
 Lipkin v. Bonita Garden Apartments, Inc.,
 
 122 So.2d 623, 624 (Fla. 3d DCA 1960)).
 

 In
 
 Skylake,
 
 the landlord was the developer of an office building. 23 So.3d at 176. While the building was under construction, the landlord signed a ten-year lease with the tenant.
 
 Id.
 
 The tenant’s occupancy was to begin ninety days after completion of the building.
 
 Id.
 
 The lease was signed on behalf of the landlord by a member of the developer company, and on behalf of the tenant by the tenant’s president and vice president.
 
 Id.
 
 There were no witnesses to any of the signatures.
 
 Id.
 

 As the building neared completion, the landlord repudiated the lease because there were no witnesses to the signatures. 23 So.3d at 176. The tenant brought an
 
 *916
 
 action for specific performance of the lease and made an alternative claim for damages for fraud.
 
 Id.
 
 The trial court entered summary judgment
 
 for
 
 the landlord, and the tenant appealed.
 
 Id.
 

 The Third District found that “the bare failure of the landlord to have his signature witnessed does not give rise to an estoppel, because to so hold would in effect render section 689.01 unenforceable.
 
 For an estoppel to operate, the tenant must have changed position in more than an insubstantial way.” Id.
 
 at 178 (emphasis added). No such facts were shown in that case.
 
 Id.
 
 Accordingly, the court affirmed that part of the trial court’s order which denied specific performance because of the lack of two-witness signatures under section 689.01.
 
 Id.
 

 Here, too, the tenant, Payless, did not “change[ ] position in more than an insubstantial way,” where it was notified prior to the effective date of the new lease (November 1, 2003), that it lacked two subscribing witnesses, and the original lease— still in effect — was not due to expire until August 2004.
 

 Gill v. Livingston,
 
 158 Fla. 577, 29 So.2d 631 (1947), is also instructive. In that case, while the court found that “as a matter of fact all four defendants were physically present at the time of execution of the lease, and might have subscribed as witnesses to the signature of each other,” the court found that estoppel applied because the lessors accepted benefits under the lease, placed the lessee in possession, “negotiated to convey the lands subject to the lease, and in all respects have recognized it as being an effective conveyance, and in equity they ought not to be permitted to disavow it now.” 29 So.2d at 632. In the case at bar, however, while Mr. Asulin and llene Richmond could have witnessed each other’s signatures, S & I challenged the validity of the second lease from the outset (and prior to its November 1, 2003 effective date), and went to great lengths so as not to accept benefits under the October 2003 lease. As stated, all of Payless’s rent payments have been deposited in the court registry pending the outcome of this dispute.
 

 Based on the foregoing, we conclude that the 2003 lease was void from its inception, and therefore, we reverse and vacate the final judgment below and direct the entry of a judgment in favor of llene Richmond, as general partner of S & I. As Ilene’s remaining claims are contingent upon our affirming the judgment of the trial court, we need not address them. Nor do we need to address Payless’s first point on cross-appeal, that the trial court erred in giving a jury instruction which suggested that the landlord’s consent was required before Payless could sublease to its subtenants under the 2003 lease. We do, however, address the second point on cross-appeal, that the trial court erred in granting S & I’s motion for summary judgment on Payless’s claim of abuse of process against S & I and llene Richmond.
 

 In its second amended counterclaim and consolidated amended complaint, Payless alleged that the complaint in an earlier case,
 
 S & I Investments v. Payless Flea Market, Inc.,
 
 Case No. 03-020914, 2003 WL 25863321, and subsequent amendments to the complaint in that case, constituted an abuse of process.
 

 We apply a de novo standard of review to an order granting summary judgment.
 
 Volusia County v. Aberdeen at Ormond Beach, L.P.,
 
 760 So.2d 126, 130 (Fla.2000).
 

 Payless contends that, shortly after the execution of the 2003 lease, llene Richmond, in a series of communications with Mr. Asulin, stated that she not only would not honor the lease, but would also “keep Payless in litigation for ten years”; “make Isaac Asulin’s life a living hell”; “cost Asu-lin and Payless thousands in legal fees”;
 
 *917
 
 and finally, “would try everything to get him evicted.” Payless argues that those statements are evidence of an improper purpose for the S & I lawsuit. We disagree and affirm.
 

 “[T]he usual case of abuse of process involves some form of extortion,”
 
 see Bothmann v. Harrington,
 
 458 So.2d 1163, 1169 (Fla. 3d DCA 1984), but even extortion-sounding threats, if made prior to the institution of process and litigation, fall outside the parameters of the tort of abuse of process. “There is no abuse of process [ ] when the process is used to accomplish the result for which it was created,
 
 regardless of an incidental or concurrent motive of spite or ulterior purpose.” Id.
 
 (emphasis supplied).
 
 [5]
 

 A cause of action for abuse of process contains three elements: (1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage.
 
 Della-Donna v. Nova Univ., Inc.,
 
 512 So.2d 1051, 1055 (Fla. 4th DCA 1987). The plaintiff must prove that the process was used for an immediate purpose other than that for which it was designed.
 
 Biondo v. Powers,
 
 805 So.2d 67, 69 (Fla. 4th DCA 2002). Where the process was used to accomplish the result for which it was intended,
 
 “regardless of an incidental or concurrent motive of spite or ulterior purpose,”
 
 there is no abuse of process.
 
 Id.
 
 (quoting
 
 Scozari v. Barone,
 
 546 So.2d 750, 751 (Fla. 3d DCA 1989)).
 

 “[T]he mere filing of a complaint and having process served is not enough to show abuse of process.”
 
 Della-Donna,
 
 512 So.2d at 1055 (citing
 
 McMurray v. U-Haul Co.,
 
 425 So.2d 1208 (Fla. 4th DCA 1983)). The plaintiff must prove improper use of process after it issues.
 
 Id.
 
 at 1056.
 

 In
 
 McMurray,
 
 despite the existence of illegal, improper and/or perverted motivations by the appellee occurring before service of process, which may well sustain a cause of action for malicious prosecution, all the appellee did was file a complaint and have process served upon the appellant. This court held:
 

 Abuse of process in this case required more; namely, an act which constituted misuse of the process after it was issued. There is no such allegation of a post-issuance act other than service of what was issued.- In 1 Am. Jur. 2d
 
 Abuse of Process
 
 § 2 at 250 (1962), the test applicable to this case is described without semantic vagueness:
 

 An action for abuse of process differs from an action for malicious prosecution in that the latter is concerned with maliciously causing process to issue, while the former is concerned with the improper use of process after it has been issued.
 

 Id.
 
 at 1209 (footnote omitted);
 
 see also Marty v. Gresh,
 
 501 So.2d 87, 90 (Fla. 1st DCA 1987) (holding events before service of process which may have suggested malicious intent did not advance cause of action for abuse of process);
 
 Yoder v. Adriatico,
 
 459 So.2d 449, 450 (Fla. 5th DCA 1984) (“The tort of malicious prosecution is concerned with maliciously causing process to issue, whereas the tort of abuse of process is concerned with the improper use of process after it issues.”); Cazares v.
 
 Church of Scientology of Cal., Inc.,
 
 444 So.2d 442, 444 (Fla. 5th DCA 1983) (“[A]buse of process requires an act consti
 
 *918
 
 tuting the misuse of process after it issues. The maliciousness or lack of foundation of the asserted cause of action itself is actually irrelevant to the tort of abuse of process.”);
 
 Peckins v. Kaye,
 
 443 So.2d 1025, 1026 (Fla. 2d DCA 1983) (holding abuse of process consists not in issuance of process, but rather in perversion of process after its issuance; writ or process must be used in manner or for purpose not intended by law).
 

 Payless contends that S & I did more than just file the complaint and serve it upon Payless, stating: “After it recognized that the lawsuit was premature and subject to dismissal, it continued in its attempt by filing two amended complaints which it knew were legally unsustainable.” In pleading this claim, however, Payless alleged only that llene Richmond and S & I filed the case (in November 2003) and subsequently voluntarily dismissed the complaint (in July 2004). As discussed, Ilene’s pre-suit sentiments are irrelevant. Therefore, all Payless has shown is that llene and S & I filed a lawsuit and took a voluntary dismissal eight months later. Accordingly, Payless’s abuse of process claim was properly dismissed on summary judgment. We therefore affirm on this point.
 

 To the extent this opinion is in conflict with
 
 Taylor v. Rosman,
 
 we certify such conflict.
 

 Reversed in part, affirmed in part, and remanded with directions.
 

 WARNER and STEVENSON, JJ., concur.
 

 [1]
 

 . During the course of this appeal, appellant Stephanie Richmond filed an involuntary petition for Chapter 11 bankruptcy against S & I. That petition was granted and a bankruptcy trustee was appointed. In the bankruptcy case, S & I (through the trustee) and Stephanie Richmond (individually, not as a general partner) reached a settlement agreement with Payless, which was approved by the bankruptcy court. This settlement agreement terminated S & I's and Stephanie Richmond’s participation in this appeal. Although it appears that the final judgment has now been fully satisfied — as advised by the parties at oral argument — another related appeal is pending before this court, seeking review of the attorney's fee judgment entered against S & I and in favor of Payless.
 
 See
 
 Case No. 4D08-4257. As the outcome of this case may affect the fee judgment, we therefore address this appeal on the merits.
 

 [2]
 

 . Presently, Payless is not an "operational” business; it acts merely as a "middleman,” collecting rent from subtenants and paying rent to S & I.
 

 [3]
 

 . Under the "tipsy coachman" rule, when the "trial court reaches the right result, but for the wrong reasons, [that decision] will be upheld [on appeal] if there is any basis which
 
 *914
 
 would support the judgment in the record.”
 
 Dade County Sch. Bd. v. Radio Station WQBA,
 
 731 So.2d 638, 644 (Fla.1999).
 

 [4]
 

 . The trial court determined that the terms of the two leases were
 
 substantially
 
 the same and that their differences were not drastic enough to destroy the character of the second lease as a renewal lease. The trial court stated:
 

 As a matter of law, I'm finding that the lease in question is a renewal. I’m basing this ruling on the factual finding that the space is the same, the occupancy if you will in terms of that space are the same, the overlap, the fact that this same.... Legally, I'm finding that the terms are substantially the same, although I do acknowledge there are different considerations, i.e., the personal guarantee, i.e., the sales tax, has modified, i.e., the roof, et cetera, et cetera.
 

 [5]
 

 . Although the court in
 
 Bothmann
 
 denied summary judgment because facts were in dispute, 458 So.2d at 1170; here, S & I argued that Payless failed to state a claim for abuse of process, even assuming the allegations to be true.